[No. B137570. Second Dist., Div. Six. Jan. 31, 2001.]

BLAGO LEKO et al., Cross-complainants and Appellants, v. CORNERSTONE BUILDING INSPECTION SERVICE et al., Cross-defendants and Respondents; GREGORY C. PYFROM, Objector and Appellant.

**COUNSEL**

Randall J. Kelley and Natalie Blake for Cross-complainants and Appellants.

June Babiracki Barlow; Greines, Martin, Stein & Richland, Kent L. Richland and Edward L. Xanders for California Association of Realtors as Amicus Curiae on behalf of Cross-complainants and Appellants

Gaglione & Dolan and Jeffrey S. Kaplan for Cross-defendant and Respondent Cornerstone Building Inspection Service.

Blatz, Pyfrom & Associates, Lindsay Joachim and Gregory C. Pyfrom for Cross-defendants and Respondents, D-Way Fire Inspection Service and Crystal Home Inspections.

Blatz, Pyfrom & Associates and Gregory C. Pyfrom for Objector and Appellant.

**OPINION**

**COFFEE, J.**—May a realtor who is sued for negligent nondisclosure of defects in real property obtain equitable indemnity from a home inspection company that allegedly breached its duty to the purchaser to discover and

disclose the same defects? Yes. May that same realtor seek equitable indemnity when the home inspection company prepared its report for a different prospective purchaser, in connection with a previous transaction involving the same property? Yes, so long as the home inspection company intended or knew with substantial certainty that its report would be used in subsequent transactions involving the property.

## FACTS AND PROCEDURAL HISTORY

In 1997, plaintiffs Jeffrey and Joan Lee (Purchasers) purchased an Agoura Hills home from defendants Jae Tae, Sun Min, Lauren, Kyung and Samuel Lim (Sellers).[1] Purchasers' real estate agent was defendant/cross-complainant Joe Pallat (Pallat), and Sellers' agent was defendant/cross-complainant Sherry Oyler (Oyler). Both Pallat and Oyler were affiliated with the same broker, defendant/cross-complainant Blago Leko doing business as Century 21 Adobe Realty (Adobe) (collectively Realtors).

In 1998, Purchasers filed a complaint against Sellers and Realtors, alleging that they had failed to disclose defects in the property and had actively concealed major structural damage caused by the Northridge earthquake in 1994. The complaint included causes of action for fraud, breach of statutory duties, breach of fiduciary duties, negligence, and negligent and intentional infliction of emotional distress. The complaint did not name any home inspection companies as defendants.

Realtors filed a cross-complaint for equitable indemnity, contribution and declaratory relief against several home inspection companies, including cross-defendants Cornerstone Building Inspection Service (Cornerstone), Crystal Home Inspection (Crystal) and Dale Feb doing business as D-Way Fire Inspection Service (D-Way) (collectively Inspectors). Cornerstone had been retained by Purchasers to perform a general inspection of the property, and had prepared a report before the sale was consummated. Approximately one month before Purchasers made their offer on the property, Crystal and D-Way had inspected the property and prepared reports for an unrelated prospective purchaser.

Cornerstone filed a motion for judgment on the pleadings on the ground that the cross-complaint did not state a cause of action for equitable indemnity or the related theories of contribution and declaratory relief. Cornerstone argued that equitable indemnity is available only between tortfeasors who are jointly and severally liable, and posited that it could not be jointly and severally liable for any breach of Realtors' duty of care to Purchasers.

---

[1] Plaintiffs (Purchasers) and defendants (Sellers) are not parties to this appeal.

Crystal and D-Way filed a motion for summary judgment on similar grounds. They argued that their involvement in the transaction was even more attenuated because they lacked contractual privity with Purchasers or any other party to the transaction.

The trial court granted both motions. In its oral ruling, it explained that "under these circumstances, it isn't fair to allow an agent and broker to point the finger at an inspection company when the agents and brokers have a separate and independent duty to disclose all known and readily observable defects with respect to a piece of real property." Realtors appeal from the judgment of dismissal entered in favor of Cornerstone and the summary judgment entered in favor of Crystal and D-Way. Additionally, counsel for Crystal and D-Way has appealed a $950 sanctions order entered against him.

DISCUSSION

I. *Equitable Indemnity Between Realtors and Home Inspection Companies*

*Standard of Review*

■ A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint or cross-complaint, supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff or cross-complainant has stated a cause of action. (*Briggs v. Lawrence* (1991) 230 Cal.App.3d 605, 610 [281 Cal.Rptr. 578].) Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled. (*Berry v. City of Santa Barbara* (1995) 40 Cal.App.4th 1075, 1082 [47 Cal.Rptr.2d 661].) A ruling on a summary judgment motion is reviewed de novo to determine whether there are any triable issues of material fact. (Code Civ. Proc., § 437c, subd. (c); *Artiglio v. Corning Inc.* (1988) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].)

Cornerstone's motion for judgment on the pleadings and Crystal's and D-Way's motion for summary judgment present several common issues relating to a realtor's right to seek equitable indemnity from a home inspection company. The pertinent facts are essentially undisputed, and our review focuses on the legal significance of those facts. (See *Providence Washington Ins. Co. v. Valley Forge Ins. Co.* (1996) 42 Cal.App.4th 1194, 1199 [50 Cal.Rptr.2d 192]; *O'Neil v. General Security Corp.* (1992) 4 Cal.App.4th 587, 606 [5 Cal.Rptr.2d 712].)

*Introduction*

■ On appeal, Realtors contend they were entitled to seek equitable indemnity from Inspectors. They argue that Inspectors were jointly and

severally liable for any injuries suffered by Purchasers as a result of Realtors' alleged nondisclosures, and submit that the trial court erred when it determined that public policy barred joint and several liability. We agree that public policy does not preclude a realtor from seeking equitable indemnity against a home inspection company in an appropriate case.

### Joint and Several Liability

Joint and several liability is a prerequisite for equitable indemnity. (*Yamaha Motor Corp. v. Paseman* (1990) 219 Cal.App.3d 958, 964 [268 Cal.Rptr. 514].) As a threshold matter, Realtors' claim for equitable indemnity depends on whether a home inspection company and a realtor may be jointly and severally liable for the failure to disclose defects to a purchaser of residential real property.

When the negligent acts of two tortfeasors are both a proximate cause of an indivisible injury, the tortfeasors are jointly and severally liable for that injury. (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 586-588 [146 Cal.Rptr. 182, 578 P.2d 899].) Joint tortfeasors may act in concert or independently of one another. (*Id.* at p. 587.) "There seems to be no logical reason why the application of [joint and several liability] should turn on the relationship of the tortfeasors to each other. What is important is the relationship of the tortfeasors to the plaintiff and the interrelated nature of the harm done." (*Jaffe v. Huxley Architecture* (1988) 200 Cal.App.3d 1188, 1192 [246 Cal.Rptr. 432].)

Joint and several liability does not depend on whether the tortfeasors owe a duty to one another. " 'It would be unfair to require one tortfeasor to bear a loss disproportionate to his relative culpability simply because a tortfeasor who contributed to the loss owed a duty to the plaintiff but not to the defendant.' " (*GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 429, fn. 2 [261 Cal.Rptr. 626].) Nor must joint tortfeasors owe the same duty of care to the plaintiff. "[A] defendant/indemnitee may in an action for indemnity seek apportionment of the loss on any theory that was available to the plaintiff upon which the plaintiff would have been successful." (*Id.* at p. 430; see also *Yamaha Motor Corp. v. Paseman, supra,* 219 Cal.App.3d at p. 968.)

Real estate agents and brokers involved in the sale of a residential property owe the purchaser of that property a statutory duty to conduct a "reasonably competent and diligent visual inspection of the property offered for sale and to disclose to [a] prospective purchaser all facts materially affecting the value or desirability of the property that an investigation would

reveal . . . ." (Civ. Code, §§ 2079, subd. (a), 2079.16; see also Civ. Code, § 1106.) The purchaser's agent also owes the purchaser a higher fiduciary duty to act with the utmost care, integrity, honesty and loyalty. (*Brown v. FSR Brokerage, Inc.* (1998) 62 Cal.App.4th 766, 773-777 [72 Cal.Rptr.2d 828].)[2] A home inspection company retained by the purchaser owes the purchaser a statutory duty to "conduct a home inspection with the degree of care that a reasonably prudent home inspector would exercise." (Bus. & Prof. Code, § 7196.)

Each of these duties includes an obligation to discover and disclose certain defects in the property. When two or more parties have an obligation to discover and disclose the same defect, the failure of each to do so may be a proximate cause of a single indivisible injury to the person to whom the disclosure should have been made. In such cases, realtors and home inspectors will be jointly and severally liable to the purchaser for that injury.

This conclusion is supported by *Kohn v. Superior Court* (1983) 142 Cal.App.3d 323 [191 Cal.Rptr. 78], in which a purchaser of real property sued the seller, the seller's realtors and a pest control company for nondisclosure of fire damage to the property. The purchaser also sued a contractor who made allegedly negligent repairs to the fire damage, but settled with that contractor before trial. The other defendants, who had cross-complained against the contractor, opposed a motion to determine the good faith of that settlement (Code Civ. Proc., § 877.6) on the ground that they were not joint tortfeasors with the contractor. (*Kohn, supra,* at pp. 325-326, 328.) The court rejected their argument: "Here, there was but one injury, [the] purchase of a house that was worth less than plaintiffs believed. [Citation.] The alleged tortious activities by the contractor, pest control inspector and seller were not independent, but combined to create one indivisible injury which took place when the sale was consummated." (*Id.* at p. 329.)

Inspectors argue there was no indivisible injury in this case because any damage caused by their allegedly deficient home inspections was distinct from the damage caused by Realtors' failure to make the disclosures required by statute and common law. They rely on *Munoz v. Davis* (1983) 141 Cal.App.3d 420 [190 Cal.Rptr. 400], in which an attorney was sued for malpractice for failing to timely file a personal injury suit, and sought indemnity against the negligent driver who had caused his client's physical

[2]In this case, Pallat, working under Adobe's broker's license, acted as Purchasers' agent during the transaction. Oyler, Sellers' agent, was also affiliated with Adobe. Issues regarding Realtors' dual agency on behalf of Purchasers are not directly presented by this appeal and do not affect our analysis. (See Civ. Code, § 2079.13, subd. (d); 2 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 3:12, pp. 64-69.)

injuries. The court in *Munoz* concluded this scenario did not support the joint and several liability necessary for a claim of equitable indemnity: "The injury sustained . . . as a result of [the attorney's] negligence—loss of a right of action—is entirely distinct from the injury that was the immediate consequence of [the driver's] negligence—physical injuries—and does not form a normal part of the aftermath of careless driving." (*Id.* at p. 427; see also *Alhino v. Starr* (1980) 112 Cal.App.3d 158 [169 Cal.Rptr. 136] [in lawsuit by seller of real property, real estate agent who misrepresented assets of purchaser who defaulted was not jointly and severally liable with attorney who allegedly committed malpractice in settling civil suit against the purchaser].)

Purchasers' original complaint, by contrast, alleged that Realtors were liable because they had failed to discover and/or disclose structural defects in the property. Realtors' cross-complaint sought equitable indemnity from Inspectors on the theory that they had negligently failed to discover or disclose the same alleged defects. The allegations in the cross-complaint were sufficient to plead an indivisible injury—the purchase of a defective home.

## Public Policy

■ Indemnification between joint tortfeasors is an equitable rule created to correct potential injustice, and the doctrine is not available where it would operate against public policy. (See *Woodward-Gizienski & Associates v. Geotechnical Exploration, Inc.* (1989) 208 Cal.App.3d 64, 67 [255 Cal.Rptr. 800].) ■ Inspectors argue that a rule permitting realtors to seek equitable indemnity from home inspection companies would violate public policy, because it would interfere with the inspection company's duty of loyalty to its client. We are not persuaded.

■ " ' "[I]n the great majority of cases . . . equity and fairness call for an apportionment of loss between the wrongdoers in proportion to their relative culpability, rather than the imposition of the entire loss upon one or the other tortfeasor." ' " (*Jaffe v. Huxley Architecture, supra,* 200 Cal.App.3d at p. 1191.) Cases which have created exceptions to this general rule have done so "only where, because of the particular factual context, fairness did not require that any part of the loss be shifted from a defendant to a third party, or where such a loss shifting would interfere in a special relationship between the plaintiff and the third party." (*Gentry Construction Co. v. Superior Court* (1989) 212 Cal.App.3d 177, 181-182 [260 Cal.Rptr. 421].)

For example, indemnity claims by nonclients against attorneys have been disallowed when they are based on the attorney's breach of duty to his or her

client. (See, e.g., *Kroll & Tract v. Paris & Paris* (1999) 72 Cal.App.4th 1537, 1542-1545 [86 Cal.Rptr.2d 78]; *Major Clients Agency v. Diemer* (1998) 67 Cal.App.4th 1116, 1127-1129 [79 Cal.Rptr.2d 613]; *Held v. Arant* (1977) 67 Cal.App.3d 748, 752-753 [134 Cal.Rptr. 422].) " 'Perceiving that attorneys would be reluctant to accept cases that might result in indemnity claims, and, more significantly, that if faced with a potential indemnity claim, the attorney's sense of self-preservation might impinge on his or her duty of undivided loyalty to the client, these cases have established an exception to the ordinary rule of equitable indemnity.' " (*Major Clients Agency, supra,* 67 Cal.App.4th at p. 1130.) Equitable indemnity has also been denied in cases where equivalent relief is already available in the main action. (*Jaffe v. Huxley Architecture, supra,* 200 Cal.App.3d at p. 1193 [developer sued by homeowners association could not seek equitable indemnity from association's board of directors; board's wrongful conduct would be accounted for in main action under comparative fault principles].)

 Similar considerations do not apply for an indemnity claim against a home inspection company retained by the purchaser of real property. Inspection companies do not have a privileged, fiduciary relationship with the client, and their reports are not confidential. While a potential indemnity claim could detrimentally affect an attorney's advice to his or her client, it would seemingly enhance the performance of home inspectors by inducing them to be more diligent in discovering and reporting potential defects. And when the home purchasers have not directly sued the home inspection company, no equivalent relief will be available to a realtor defendant in the main action.

A rule allowing realtors to seek equitable indemnity does not unfairly shift the burden of disclosing defects from the realtor to the home inspection company. The purchaser of the property would be able to sue the home inspection company directly, and by statute, an inspector may not contractually eliminate its duty of care. (Bus. & Prof. Code, § 7198 ["Contractual provisions that purport to waive the duty owed pursuant to Section 7196, or limit the liability of the home inspector to the cost of the home inspection report, are contrary to public policy and invalid"].) Allowing realtors to seek equitable indemnity allows the realtor as well as the purchaser to initiate a lawsuit, but will not ordinarily increase the overall exposure of the home inspector for a single inspection.

Inspectors have not directed us to any statute suggesting the Legislature intended to immunize them from equitable indemnity actions as a matter of public policy. The only provision specifically addressing the overlapping duties of inspectors and realtors is Business and Professions Code section

7196.1, subdivision (b), which provides that the chapter defining the duties of home inspectors does not "affect the obligations of a real estate licensee or transferor under Article 1.5 (commencing with Section 1102) of Chapter 2 of Title 4 of Part 3 of Division 2 of, or Article 2 (commencing with Section 2079) of Chapter 3 of Title 6 of Part 4 of Division 3 of, the Civil Code." We construe this provision to mean that a realtor may not rely on a home inspection report to avoid its own statutory duty to conduct a reasonable inspection. It does not restrict a realtor's right to seek equitable indemnity in an appropriate case.[3]

We emphasize that the duties of home inspection companies and realtors are not coextensive. The failure to disclose a particular defect may violate either duty, or both, depending on the particular circumstances of the case. But when a purchaser of residential real property was damaged by the nondisclosure of a defect that both the inspector and the realtor were obligated to discover and disclose, it is fair to apportion the damages between the two. " '[T]here is [an] obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were . . . unintentionally responsible, to be shouldered onto one alone . . . .' " (*American Motorcycle Assn. v. Superior Court, supra*, 20 Cal.3d at pp. 607-608.)

### Application to Cornerstone

A home inspection company that negligently fails to discover or disclose defects in real property may be liable to a client who purchases that property. Based on the foregoing principles, we conclude that it also may be jointly and severally liable with realtors who breach an overlapping duty to disclose. In this case, Purchasers sued Realtors for failing to disclose defects in the subject property. The cross-complaint filed by Realtors alleged that Cornerstone is a real estate inspection business that "knew or should have known" of the defects in the subject property and "should have disclosed said condition." The cross-complaint is sufficient to state a cause of action for equitable indemnity, contribution and declaratory relief.

Cornerstone protests that Purchasers have sued Realtors for intentional fraud as well as negligence and breach of statutory duties. It argues that

---

[3]The parties disagree on the effect of Civil Code section 1102.4, which allows sellers and agents to make "substituted disclosures" based on the reports of third party professionals. Realtors argue that agents may be immunized from liability where they provide copies of a home inspection report to satisfy a disclosure requirement; Inspectors claim a home inspection report does not satisfy the substitute disclosure provisions. We need not decide whether a home inspector's report may fulfill a realtor's duty of disclosure to the home purchaser. Assuming it can, this does not preclude a realtor from seeking equitable indemnity from a home inspection company when its report falls below the standard of care and contains misrepresentations of material facts.

equitable indemnity would be inappropriate because it may not be jointly and severally liable for any intentional wrongdoing by Realtors. (See *Weidenfeller v. Star & Garter* (1991) 1 Cal.App.4th 1, 6-7 [2 Cal.Rptr.2d 14]; Code Civ. Proc., § 875, subd. (d).) Purchasers' complaint is not limited to intentional torts, and nothing precludes Realtors from seeking indemnity to the extent they are held liable for unintentional torts. The trial court erred by granting Cornerstone's motion for judgment on the pleadings.

### Application to Crystal and D-Way

The evidence presented in support of Crystal's and D-Way's summary judgment motion demonstrates that those entities did not inspect the subject property on behalf of Purchasers and were not directly involved in the transaction leading to this litigation. This presents an additional issue with respect to Realtors' claim for equitable indemnity. Crystal and D-Way argue that they owed no duty to Purchasers because they performed their inspections solely for a third party's benefit, and that as a result, they are not jointly and severally liable for Purchasers' injuries. We disagree.

The undisputed facts reveal that Sellers originally agreed to sell the subject property to Paul Antonsen, an unrelated third party. Antonsen retained Crystal to perform a general inspection and retained D-Way to inspect the fireplace only. Crystal prepared a report identifying several problems with the property, including bowing and cracking in the foundation. D-Way's report noted several problems with the fireplace, and recommended replacement of the entire fireplace structure. Copies of the reports were provided to Antonsen and the real estate agents involved in that transaction, including Oyler. The deal with Antonsen was never consummated and Purchasers made a purchase offer on the property less than a month later. Oyler testified in her deposition that she provided Purchasers with copies of Crystal's and D-Way's reports.

As previously discussed, Realtors' right to seek equitable indemnification from Crystal and D-Way depends on whether those inspection companies owed a duty to Purchasers and may be held jointly and severally liable to Purchasers for the nondisclosure of certain defects. (See *Yamaha Motor Corp. v. Paseman, supra,* 219 Cal.App.3d at p. 964.) Because their only connection with Purchasers was through their inspection reports, such a duty must arise from representations contained in those reports, rather than negligence in the course of the inspections themselves.

In an analogous context, our Supreme Court has discussed the circumstances in which a supplier of commercial information may be liable

to a nonclient. In *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407-415 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835], the court concluded that while an independent accountant did not owe a general duty of care to third parties with respect to the conduct of an audit prepared for its client company, it could be liable for negligent misrepresentation to "intended beneficiaries" who relied on the audit report. In so holding, the court adopted section 552 of the Restatement Second of Torts, which provides that one who negligently supplies false information " 'for the guidance of others in their business transactions' " is liable for loss suffered " '(a) [b]y the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.' " (*Bily, supra,* 3 Cal.4th at p. 392, citing Rest.2d Torts, § 552, subd. (2).)

Though *Bily* involved the liability of accountants, its reasoning applies with equal force to home inspection companies. "Accountants are not unique in their position as suppliers of information and evaluations for the use and benefit of others. Other professionals, including attorneys, architects, engineers, title insurers and abstractors, and others also perform that function." (*Bily v. Arthur & Young, supra,* 3 Cal.4th at p. 410.) In *Soderberg v. McKinney* (1996) 44 Cal.App.4th 1760 [52 Cal.Rptr.2d 635], for example, the court held that a real estate appraiser could be liable to investors for misrepresentations contained in its appraisal, even though the appraiser had been retained by a mortgage broker rather than the investors themselves.

Under *Bily* and the Restatement Second of Torts, a supplier of commercial information is deemed to have intended to influence a transaction by a third party when the supplier " 'knows with substantial certainty' " that the third party, or the class of persons to which that third party belongs, will rely on the information in the course of the transaction. (*Bily v. Arthur & Young, supra,* 3 Cal.4th at p. 414.) A reasonable trier of fact could infer that when Crystal and D-Way provided their reports to the listing agent on the property, they knew with substantial certainty that those reports would be transmitted to other prospective purchasers if the pending deal fell through. (Cf. *Soderberg v. McKinney, supra,* 44 Cal.App.4th at p. 1771.) This inference may be drawn even though Crystal's written contract with Antonsen stated that the report could not be used by or transferred to other persons without Antonsen's and Crystal's consent. (*Id.* at pp. 1770-1771 [provision that appraisal report was restricted to use by mortgage broker did not establish that, as matter of law, appraiser owed no duty to third party investor].) Crystal and D-Way did not establish, as a matter of law, that they

believed the inspection reports would be used solely by Antonsen, the previous purchaser. (*Id.* at pp. 1771-1772.)

*Breach of Duty*

Inspectors argue that if a duty of care was owed to Purchasers, there is no evidence to show they breached that duty. This issue is not properly before us. Cornerstone was granted judgment on the pleadings, and we may not consider the extrinsic evidence to which it refers in its appellate briefs when reviewing the ruling on that motion. (See *Cloud v. Northrup Grumman Corp.* (1998) 67 Cal.App.4th 995, 999 [79 Cal.Rptr.2d 544].) Crystal and D-Way moved for summary judgment based solely on the alleged absence of duty to a subsequent home purchaser. They did not present admissible evidence to establish that they met their duty of care as a matter of law.

Inspectors may well have defenses to the claims against them. One issue lurking in this case, but not briefed by the parties, is whether liability under *Bily* will attach if the only wrongful conduct by an inspection company is a negligent failure to disclose a defect. (See, e.g., *Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 306 [18 Cal.Rptr.2d 779] [negligent misrepresentation is a species of fraud or deceit specifically requiring an assertion of fact, and an "implied" assertion or representation is not enough].) Another is whether D-Way can be held liable for nondisclosure of defects when it recommended a complete replacement of the fireplace structure it was hired to inspect. However, the procedural posture of this case makes it inappropriate for us to analyze the substance of the inspection reports or to resolve the ultimate issue of Inspectors' liability.

In reversing the orders granting judgment on the pleadings and summary judgment, we express no opinion about the ultimate merits of Realtors' claims. We conclude only that Realtors are not barred, as a matter of law, from seeking equitable indemnity.

II. *Attorney Fees as Sanction*

Attorney Gregory C. Pyfrom has represented Crystal and D-Way throughout the trial court proceedings and in this appeal. Before he filed the motion for summary judgment on behalf of his clients, he was ordered to pay $950 to Realtors' counsel Natalie Blake as a discovery sanction. He has separately appealed this order, contending it was unauthorized. We disagree.

Pyfrom unilaterally noticed the depositions of Oyler, Pallat and Blago Leko, for March 1 and 2, 1999 (a Monday and Tuesday). Due to oversight

and a possible misunderstanding arising from a conversation with Pyfrom's associate, Attorney Blake did not calendar these dates. Pyfrom's office called to confirm the depositions on February 26, the Friday before they were scheduled, and was informed that neither counsel nor the defendants would be available. At 4:30 p.m., Pyfrom left a message with Blake's office that he would not take the depositions off calendar. Blake, who was out of her office at the time, sent a letter to Pyfrom via facsimile at 4:45 p.m., confirming that neither she nor her clients could attend the depositions as scheduled, but inviting Pyfrom to contact her office to arrange an alternative date. Pyfrom then advised Blake by fax that he had cancelled the stenographer but would be filing a motion to compel the depositions.

That same evening, Pyfrom faxed another letter to Blake in which he described her conduct as "unprofessional, outrageous and distressing." After criticizing Blake's "juvenile behavior" and characterizing the lawsuit against his clients as meritless, Pyfrom concluded, "You will find, if you known [*sic*] how to read, that 'knee jerk' cross-complaints for indemnity are improper and sanctionable without a firm and distinct basis. This distinct basis is not subject to defense by hunch, women's intuition or 'tea leaf interpretations. [¶] When you come to the motion, bring you [*sic*] check book."

Blake sent a letter to Pyfrom on March 9, 1999, stating that she had not been contacted regarding the scheduling of her clients' depositions. "Please know that, despite the tone of your most recent correspondence, the offer to set the depositions on a mutually convenient date still stands. Again, we apologize for any misunderstanding regarding the original scheduling of the depositions." On March 22, 1999, Pyfrom filed a motion to compel the depositions. He did not attach any of his correspondence with Blake to the motion.

The trial court denied the motion to compel and requested supplemental briefing on whether it should impose sanctions against Pyfrom for his unprofessional communications with counsel and his refusal to resolve the matter informally. It ultimately awarded $950 under Code of Civil Procedure section 2023, subdivision (a)(3), which authorizes sanctions for "[e]mploying a discovery method in a manner or to an extent that causes unwarranted annoyance, embarrassment, or oppression, or undue burden and expense." The court also referenced subdivision (a)(9) of the same statute, which authorizes sanctions for "[f]ailing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning discovery, if the section governing a particular discovery motion requires the filing of a declaration stating facts showing that such an attempt has been made. . . ."

Pyfrom contends he could not be sanctioned because he was authorized to proceed with his motion to compel and was not required to seek an informal resolution with opposing counsel. He relies on Code of Civil Procedure section 2025, subdivision (j)(3)(B), which governs a party witness's failure to appear at or proceed with a properly noticed deposition, and provides that a motion to compel attendance "shall be accompanied by a declaration stating facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by it *or, when the deponent fails to attend the deposition . . . by a declaration stating that the petitioner has contacted the deponent to inquire about the nonappearance.*" (Italics added.) Pyfrom reasons that he complied with this statute by contacting Attorney Blake after he was told her clients were unavailable on the scheduled dates.

Implicit in the requirement that counsel contact the deponent to inquire about the nonappearance is a requirement that counsel listen to the reasons offered and make a good faith attempt to resolve the issue. Here, the failure to appear was due to oversight and opposing counsel expressed a willingness to reschedule the depositions at a mutually convenient date. The trial court did not abuse its discretion when it determined that Pyfrom did not comply with his obligations under Code of Civil Procedure section 2025, subdivision (j)(3)(B). (See *Estate of Ruchti* (1993) 12 Cal.App.4th 1593, 1601-1602 [16 Cal.Rptr.2d 151].) Sanctions were properly awarded under section 2023, subdivision (a)(3) and (9).

Pyfrom argues that the court overstepped its bounds by using discovery sanctions to penalize him for the unprofessional tone of his February 26 letter to Attorney Blake. Pyfrom was not sanctioned for the letter per se, but for filing an unnecessary motion to compel. The letter was relevant because it demonstrated that Pyfrom had completely disregarded his obligation to attempt to informally resolve the discovery issue.

In the respondent's brief, Attorney Blake requests sanctions against Pyfrom for filing a frivolous appeal. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a).) She has not filed a separate motion or supporting declaration as required by California Rules of Court, rule 26(e), and we have no basis for determining the appropriate amount of sanctions. (See *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1450 [77 Cal.Rptr.2d 463].)

### DISPOSITION

The order granting judgment on the pleadings in favor of cross-defendant Cornerstone and the order granting summary judgment in favor of cross-defendants Crystal and D-Way are reversed. The sanctions order entered against Attorney Pyfrom is affirmed.

Costs on appeal are awarded to Realtors. Costs associated with the cross-appeal challenging the award of sanctions shall be borne by Gregory C. Pyfrom personally.

Yegan, Acting P. J., and Perren, J., concurred.

A petition for a rehearing was denied February 28, 2001, and respondents' petition for review by the Supreme Court was denied May 2, 2001.