**In re MEDICAL CAPITAL SE-CURITIES LITIGATION.**

**This document relates to No. SACV 09–1048 DOC (RNBx).**

**Steven Masonek, et al., Plaintiff(s),**

v.

**Wells Fargo Bank, N.A., et al., Defendant(s).**

**Case No. SACV 10–2145 DOC (RNBx).**

United States District Court, C.D. California.

Jan. 31, 2012.

Joel M. Cohen, Mark Kirsch, Rachel Lavery, Ladan F. Stewart, Gibson Dunn & Crutcher LLP, New York, NY, Joel Alan Feuer, Diana M. Feinstein, Timothy William Loose, Gibson Dunn & Crutcher LLP, Los Angeles, CA, for Bank of New York Mellon.

Lawrence C. Barth, Richard C. Chen, Marc T.G. Dworsky, Joshua P. Groban, Matthew A. MacDonald, Randall G. Sommer, Munger Tolles & Olson LLP, Los Angeles, CA, for Wells Fargo Bank, N.A.

David B. Dyer, Secore and Waller LLP, Dallas, TX, Susan C.V. Jones, Elkins, Kalt, Weintraub, Reuben, Gartside, LLP, Los Angeles, CA, for Cullum & Burks Securities, Inc.

Jeffrey K. Riffer, Susan C.V. Jones, Elkins, Kalt, Weintraub, Reuben, Gartside, LLP, Los Angeles, CA, for Cullum .& Burks Securities, Inc./National Securities Corp.

Bruce Bettigole, Nicholas T. Christakos, Deborah G. Heilizer, Sutherland, Asbill & Brennan LLP, Washington, DC, Mike Margolis, Timothy J. Martin, Margolis & Tisman LLP, Los Angeles, CA, for Securities America, Inc./Securities America Financial Corp.

John S. Baker, Dorsey & Whitney LLP, Costa Mesa, CA, Peter W. Carter, Dorsey & Whitney LLP, Minneapolis, MN, for Ameriprise Financial, Inc.

David A. Baugh, Gara M. Sliwka, Baugh, Dalton, Carlson and Ryan, LLC, Chicago, IL, for Capital Financial Services, Inc.

Joseph P. Zampi, Zampi & Associates, San Diego, CA, for Signature Financial.

## ORDER GRANTING MOTIONS TO DISMISS

DAVID O. CARTER, District Judge.

Before the Court are nine motions to dismiss filed by seven third-party broker dealer defendants ("BD Defendants") seeking to dismiss the third-party complaints filed by Wells Fargo Bank, N.A. ("Wells Fargo") and the Bank of New York Mellon ("BNYM") (collectively, the "Banks"). These motions are as follows: Cullum & Burks Securities, Inc.'s ("Cullum & Burks") Motion to Dismiss Wells Fargo's Third–Party Complaint (Docket 255); Cullum & Burks' Motion to Dismiss

BYNM's Amended Third–Party Complaint (Docket 256); National Securities Corporation's ("NSC") Motion to Dismiss BNYM's Amended Third–Party Complaint (Docket 257); NSC's Motion to Dismiss Wells Fargo's Third–Party Complaint (Docket 258); Securities America, Inc. ("SAI") and Securities America Financial Corp.'s ("SAFC") Motion to Dismiss Wells Fargo's Third–Party Complaint (Docket 259); SAI's Motion to Dismiss BNYM's Amended Third–Party Complaint (Docket 261); Ameriprise Financial, Inc.'s ("Ameriprise") Motion to Dismiss Wells Fargo's Complaint (Docket 263); Capital Financial Services, Inc.'s ("Capital Financial") Combined Motion to Dismiss Wells Fargo Third–Party Complaint and BNYM's Amended Third Party Complaint (Docket 233 in Case No. SACV 09–1048); and Signature Financial Group, Inc.'s ("Signature Financial") Motion to Dismiss BNYM's Amended Third–Party Complaint (Docket 279) (collectively, the "Motions to Dismiss"). After careful consideration of the moving, opposing, and replying papers, the Court hereby GRANTS the Motions to Dismiss.

## I.  BACKGROUND

*Masonek v. Wells Fargo Bank, N.A., et al.,* No. SACV 09–1048, a member action in the *In re Medical Capital Securities Litigation,* No. 10–ML–2145 MDL, is a class action asserting breach of contract claims against the Banks. The *Masonek* plaintiffs seek to recover alleged losses arising from their purchase of promissory notes issued by Medical Capital Holdings, Inc. and its affiliates (collectively, "MedCap"). They allege that the Banks, in their role as indenture trustees, breached contracts entered into with various MedCap special purpose corporations, which allegedly caused the *Masonek* plaintiffs' losses. The Banks, in turn, contend that it was the wrongful acts and omissions of the BD Defendants, who marketed and sold the promissory notes at issue, that caused any

harm allegedly suffered by the *Masonek* plaintiffs. The Banks thus each filed a third party complaint against the BD Defendants, seeking equitable indemnification and contribution, to the extent the Banks are held liable in the *Masonek* action (Docket 178).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1968, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). However, exhibits

attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995); *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).' " *Id.*

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey,* 353 F.3d 750, 758 (9th Cir.2003) (citing *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996)); *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000).

## III. DISCUSSION

### A. *Choice–of–Law*

As an initial matter, the Court finds it necessary to undertake a choice-of-law inquiry and conclusively hold which state's law applies to the Banks' claims for equitable indemnification and contribution. Wells Fargo's Complaint is titled "Third Party Complaint for Equitable Indemnification and Contribution" and seeks a "judgment declaring Wells Fargo's right to total or partial indemnification and contribution," yet in its Opposition and at oral argument, Wells Fargo clarifies that it is not seeking contribution under California law. *See* Wells Fargo Opposition, 11, n. 4. Rather, Wells Fargo seeks equi-

table indemnification under California law; or in the event the Court concludes that equitable indemnification is not permissible under California law, Wells Fargo seeks proportionate contribution under South Dakota or Minnesota law. *Id.* at 11. It is thus important at this threshold to determine the state law that will apply to the present case.

■ In ruling on choice-of-law issues, California courts apply a governmental interest analysis. *Kearney v. Salomon Smith Barney, Inc.,* 39 Cal.4th 95, 100, 45 Cal.Rptr.3d 730, 137 P.3d 914 (2006). Under this analysis, a court must first determine whether there is a "true conflict" between jurisdictions. *Id.* If such a conflict exists, the court analyzes the respective interests of the jurisdictions to determine which jurisdiction's interest would be more severely impaired if its law were not applied. *Id.* As will be discussed below, California law does not support a claim for equitable indemnification in the present case. The first inquiry is thus whether there is any conflict between California law and the law of South Dakota or Minnesota, in that those states would find Wells Fargo's equitable indemnification claim viable as a matter of law.

■ Wells Fargo cites *City of Bridgewater v. Morris* for the proposition that South Dakota law permits the equivalent of equitable indemnification for a contract defendant seeking indemnification from a tortfeasor defendant. 594 N.W.2d 712 (1999). Wells Fargo's citation to this case is curious because *Bridgewater* explicitly holds that the trial court was in error to instruct the jury on relative fault in a case with two contract defendants. *Id.* at 717. A South Dakota statute provides for proportionate contribution between contract defendants that are jointly and severally liable; only because the jury verdict essentially established the percentage of fault

required to apply the statute was the trial court's error was deemed harmless. *Id. Bridgewater* makes clear that there is no equitable indemnification between contract defendants under South Dakota law, much less between one contract defendant and one tort defendant. There is thus no conflict between South Dakota and California law.

The same is not true, however, for Minnesota law. In *City of Willmar v. Short–Elliott–Hendrickson, Inc.,* the court held that "contribution-indemnity is not based on contract or tort, although either may be secondarily involved, but on one party paying more than its fair share of a common liability. Common liability exists when both parties are liable to the plaintiff for the same damages, even though their liability may depend on different legal theories." 512 N.W.2d 872 (1994). *See also Parkos Const. Co., Inc. v. Anchor Distributing, Inc.,* 2008 WL 2246044, at *3–4 (Minn.App.2008). Minnesota indemnification law, unlike California law, appears not to be limited to joint tortfeasors.

■ Because there is a conflict between California and Minnesota law in terms of equitable indemnification, the Court must now determine which state's interest would be more severely impaired if its law were not applied. In its Opposition, Wells Fargo asserts that Minnesota's interest in applying its own law stems from the fact that "Wells Fargo employees with principal responsibility for handling the documentation under the NISAs worked in a Corporate Trust Services office located in Minnesota." Wells Fargo Opposition, 10. This vague and attenuated connection to Minnesota is not sufficient to create a dominant state interest in having its laws enforced. Wells Fargo has had a presence in California for over a century; the Med-Cap entities were located in California; some of the investors live in California; the Note Issuance and Security Agree-

ment under which Wells Fargo has been sued is governed by California law; and California is the forum state. These close ties to California leave the Court with the conclusion that California's interest would be more severely impaired if its law were not applied. California choice-of-law principles weigh in favor of utilizing California state law, and that is what this Court will do.

### B. *Equitable Indemnity*

Each of the Motions to Dismiss argues that a breach of contract defendant cannot seek equitable indemnity from tortfeasors. The BD Defendants argue that because the *Masonek* plaintiffs assert only a breach of contract claim against the Banks, the Banks cannot seek equitable indemnity from BD Defendants, who may be liable in tort or under different contracts. The Banks do not challenge their classification as contractual defendants, nor do they assert that the BD Defendants could be held liable under the same contracts. The BD Defendants and the Banks diverge, however, on their interpretation of California state law regarding the doctrine of equitable indemnification.

■ When a federal district court sits in diversity, the court applies state substantive law to the state law claims. *Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC,* 632 F.3d 1056, 1060 (9th Cir.2011). "[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it ... The decisions of the state's intermediate appellate courts are data that a federal court must consider in undertaking this analysis." *Westlands Water Dist. v. Amoco Chemical Co.,* 953 F.2d 1109, 1111 (9th Cir.1991) (quoting *Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.,* 880 F.2d 176, 186 (9th Cir.1989)). If a state supreme

court has not yet ruled on an issue but intermediate appellate courts have ruled, federal courts should follow the intermediate courts "unless there is convincing evidence that the state supreme court would decide differently." *Id.* (quoting *State Farm Fire & Casualty Co. v. Abraio,* 874 F.2d 619, 621 (9th Cir.1989)).

█ California state law, as set forth by intermediate appellate courts, is clear. Equitable indemnity is only available between joint tortfeasors. *Stop Loss Insurance Brokers Inc. v. Brown & Toland Medical Group* is exactly on point. 143 Cal.App.4th 1036, 49 Cal.Rptr.3d 609 (2006). There, the Court of Appeal held that "[i]t is well-settled in California that equitable indemnity is only available among *tortfeasors* who are jointly and severally liable for the plaintiff's injury." *Id.* at 1040, 49 Cal.Rptr.3d 609 (citing *Leko v. Cornerstone Bldg. Inspection Service,* 86 Cal.App.4th 1109, 1115, 103 Cal.Rptr.2d 858 (2001)). The Banks attempt to distinguish this case because the contractual defendant in *Stop Loss* was the third-party defendant, not the third-party plaintiff, as is the case here. This distinction does not control. As the *Stop Loss* court made clear, both the party seeking indemnification and the party from which it seeks indemnification must be tortfeasors. *Id.*

Even the concurring judge in *Stop Loss,* an apparent proponent of the policy behind the Banks' position, acknowledges the complications that would arise from extending equitable indemnity to parties liable for breach of contract. He explains that "apportionment between parties who have breached different contracts entered at different times would in theory require the use of different measures of damages, as would apportionment as between a party liable in tort and a party liable for breach of contract. This would, at a minimum, complicate the apportionment formula." *Id.* at 1054, 49 Cal.Rptr.3d 609.

He does not distinguish between third-party plaintiffs and defendants because his point about the incompatibility between contract and tort remedies holds true, regardless of which party is in which position. Contract law tends to favor an all-or-nothing approach to recovery, while tort law has long focused on the concept of comparative fault. These two philosophies are not easily compatible, so there are significant policy reasons to limit equitable indemnity to only joint tortfeasors.

█ The most important feature of the *Stop Loss* concurrence, however, is the judge's recognition that "[a]lthough there may be good reason to [extend equitable indemnification to contractual defendants], any fundamental change should come from our Supreme Court, or from the Legislature. Absent such a change, I agree with the majority that we must adhere to the rule that equitable indemnity may be obtained only from one who is jointly and severally liable to the injured party based on the commission of a tort." *Id.* at 1054–55, 49 Cal.Rptr.3d 609. Due the complications described above, the concurring judge would also be "reluctant to adopt a rule departing fundamentally from well-established law on this issue." *Id.* It is extremely telling that even a proponent of an expansive equitable indemnification doctrine recognizes that there is presently no legal basis for such an extension. Perhaps the California Supreme Court or the California Legislature will extend the law at some future date and, at that time, this Court will be happy to enforce it. At the present time, however, California state law clearly prohibits the Banks' claims for equitable indemnity and there is not sufficient evidence to suggest that the Supreme Court would hold any differently.

Other cases confirm this conclusion. In *Travelers Casualty and Surety Company of America v. Desert Gold Ventures, LLC,*

defendants sought equitable indemnity from all cross-defendants "according to their respective fault" but because the claim against defendants was one for breach of contract, the court held that "whatever losses [defendants] incur as a result of their breach of the [contract] are theirs alone, not subject to apportionment." No. CV 09–4224 PSG (AJWx), 2010 WL 5017798, at *15 (C.D.Cal. Nov. 19, 2010). *See also Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, No. C 09–4485, 2010 WL 689940, at *9 (N.D.Cal. Feb. 23, 2010).

The cases relied upon by the Banks do not lead the Court to a different conclusion. First, the Banks argue that *County of San Mateo v. Stanley Berney* is exactly on point, but this 1988 case's limited holding is not applicable to the present case. 199 Cal.App.3d 1489, 245 Cal.Rptr. 738 (1988). There, the court held that the county, which was subject to potential liability for inverse condemnation, could seek indemnification from third parties whose tortious acts caused damage to the property. *Id.* at 1494, 245 Cal.Rptr. 738. The Banks, in particular, latch on to the court's policy discussion, in which it stated:

> The duty to indemnify may arise, and indemnity may be allowed in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indemnity to the one from whom indemnity is sought. The right depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which sought to have been paid by the wrongdoer, they may recover from him. Thus, the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case.

*Id.* at 1492–93, 245 Cal.Rptr. 738. The Banks thus argue that the only factor the Court here should consider is equity. The *Berney* court's policy discussion is, however, not dependent upon the broad holding that the Banks attempt to advance. Equity can still be a relevant consideration even if equitable indemnification is limited to joint tortfeasors and the doctrine of inverse condemnation. Equity and fairness should be considered in all court orders; but, contrary to the Banks' suggestion, the use of those principles does not preclude other legal limitations, like the joint tortfeasor limitation on equitable indemnification.

*Berney* is limited to its specific holding; if this case were one involving inverse condemnation by a public entity, the Banks would likely prevail. But, it does not, and the Banks cannot point to any case where a defendant held liable for breach of contract was permitted to assert a claim for equitable indemnity against a defendant liable in tort. *Berney* is not inconsistent with the BD Defendants' position because inverse condemnation, unlike contract, has its roots in the principles of tort and property law. *Aetna Life & Casualty Co. v. City of Los Angeles*, 170 Cal.App.3d 865, 873, 216 Cal.Rptr. 831 (1985). The application of equitable indemnification to inverse condemnation is a logical extension and does not result in the same practical problems discussed in the *Stop Loss* concurrence. *Berney* is not sufficient support for the proposition that the California Supreme Court would extend the doctrine of equitable indemnity to parties liable in contract.

The Banks also seek to rely on *Dell'Oca v. Bank of New York Trust Company*, 159 Cal.App.4th 531, 71 Cal.Rptr.3d 737 (2008). Reliance on this case is, at best, a stretch. The *Dell'Oca* court only discusses the role of offset in the context of a specific statute

not at issue here-but, more importantly, does not make any holding related to either offset or equitable indemnity. *Id.* at 561, 71 Cal.Rptr.3d 737. The court only notes that "[i]f after retrial damages are awarded to plaintiffs, then the trial court will have to determine, based on plaintiff's theory of recovery, whether those damages amount to double recovery from BNY and the settling defendants, if BNY and the settling defendants were joint tortfeasors, and/or if BNY was a co-obligor with rights of contribution from the settling defendants. If so, then BNY would be entitled to an offset for the value of those settlements." *Id.* This Court can ensure that no judgments result in double recovery, but this conclusion does not provide any support for extending equitable indemnification law to defendants liable in contract. The *Dell'Oca* court even explicitly refers to the requirement that the parties be joint tortfeasors, further supporting the BD Defendants' analysis of California equitable indemnification law.

Quite simply, California law is settled and it does not permit the Banks' claims for equitable indemnity because the Banks and BD Defendants are not joint tortfeasors. The California Court of Appeal has decided this issue and there is no evidence that the California Supreme Court would rule otherwise. There are significant practical concerns that would result from permitting equitable indemnification claims to extend to contractual defendants; these arguments have persuaded the Court of Appeal, which suggests that the California Supreme Court would not deviate from present doctrine.

Accordingly, the Banks' claims for equitable indemnification are hereby DISMISSED WITH PREJUDICE.

### C. *Contribution*

■ Pursuant to California Civil Procedure Code § 875(a), "[w]here a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided." The right of contribution thus does not come into existence until the issuance of a judgment. *Sullins v. Exxon/Mobil Corp.*, 729 F.Supp.2d 1129, 1138 (N.D.Cal.2010) (citing *Coca-Cola Bottling Co. v. Lucky Stores, Inc.*, 11 Cal.App.4th 1372, 1378, 14 Cal.Rptr.2d 673 (1992)). *See also General Electric Co. v. State of Cal. ex rel. Dept. Pub. Wks.*, 32 Cal.App.3d 918, 925, 108 Cal.Rptr. 543 (1973) ("It has now been repeatedly held that the condition of this statute-a money judgment rendered jointly against two or more defendants-must exist before either may assert a right to contribution from the other."). It is undisputed that there is not yet any judgment in the present case against BNYM. In its Opposition, BNYM chose not to oppose the dismissal without prejudice of its contribution claims. *See* BNYM Opposition, 16, n. 13. There has been no judgment in the present case and thus the BNYM's claim for contribution is hereby DISMISSED WITHOUT PREJUDICE.

### IV. DISPOSITION

For the aforementioned reasons, the Motions to Dismiss are hereby GRANTED. The Third–Party Complaint of Wells Fargo is DISMISSED WITH PREJUDICE as to Third–Party Defendants Cullum & Burks, NSC, SAI, SAFC, Ameriprise, and Capital Financial. The equitable indemnity claim in the Amended Third–Party Complaint of BNYM is DISMISSED WITH PREJUDICE as to Third–Party Defendants Cullum & Burks, NSC, SAI, Capital Financial, and Signature Financial. The contribution claim in the Amended Third–Party Complaint of BNYM is hereby DISMISSED WITHOUT PREJUDICE as to Third–Party Defendants Cullum & Burks, NSC, SAI,

SAFC, Capital Financial, and Signature Financial. BNYM[1] may reassert its contribution claim if and only if the requirements of California Civil Procedure Code § 875 have been satisfied.

IT IS SO ORDERED.

---

1. Because Wells Fargo made clear at oral argument that it does not seek contribution under California law, it may not assert such a claim at a later date.