[No. F050528. Fifth Dist. July 21, 2008.]

IGNACIO GARCIA, Plaintiff and Respondent, v.
PARAMOUNT CITRUS ASSOCIATION, INC., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of the Introduction.

1450

COUNSEL

Horvitz & Levy, John A. Taylor, Jr., Jeremy B. Rosen; Lynberg & Watkins, Dana Alden Fox, Daniel G. Eskue; Law Offices of Oliver U. Robinson, Robinson & Keller and Oliver U. Robinson for Defendant and Appellant.

Daniel J. Popeo, Richard A. Samp and Paul F. Utrecht for Washington Legal Foundation and Allied Educational Foundation as Amici Curiae on behalf of Defendant and Appellant.

Law Offices of Young & Nichols, Todd A. Gall and Thomas A. Brill for Plaintiff and Respondent.

Arkin & Glovsky and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

**VARTABEDIAN, Acting P. J.—**

**Introduction**[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**Facts and Procedural History**

 This is an appeal from judgment entered on a jury verdict in favor of respondent Ignacio Garcia and against appellant Paramount Citrus Association, Inc. We will conclude the judgment must be reversed because, under the circumstances of this case, appellant owed no legal duty to respondent. Consequently, we will not reach the other issues presented by the parties and amici curiae, concerning the award of damages in this case.[2]

As relevant to this appeal and viewing the evidence in the light most favorable to respondent, the facts can be summarized as follows. Salud Andrade (Andrade) was a crew supervisor for a farm labor contractor in Tulare County. On April 2, 2001, Andrade had a crew picking oranges on the Burdick Ranch, which was adjacent to appellant's Abercrombie Ranch, which also consisted of citrus groves. Andrade, driving a three-quarter-ton flatbed truck and pulling a trailer, had delivered a forklift to his crew and was pulling the now empty trailer as he went to another crew's worksite. Andrade wanted to get to Road 172, and he saw an oiled farm road he thought would lead directly to Road 172. He had never been on this farm road before, even though he had been working in the general area for several years and had driven on many other farm roads.

The farm road, sometimes referred to as Abercrombie Road, ran in an east-west direction between two sections of appellant's groves, then intersected with Road 172 before continuing between two other sections of grove on the west side of Road 172. Access to the road was blocked by cables except on days appellant's workers needed access to the property. The cables had been lowered for such access on the day in question.

About 7:00 a.m., Andrade drove west on Abercrombie Road, looking for Road 172. He apparently did not perceive Road 172 until his truck entered

---

[*]See footnote, *ante*, page 1448.

[2] These issues concern the availability, extent, and measure of personal injury damages when plaintiff is an undocumented alien with no legal right to remain in the United States or to work here.

the roadway. Without slowing appreciably, he rammed a van in which respondent and other farmworkers were being transported to a worksite. The van, which had been traveling about 50 miles per hour, was knocked from the roadway and rolled over. Respondent was severely injured; he suffered brain damage and was rendered essentially paraplegic by the accident. (He has some limited use of his legs but cannot walk a significant distance.)

Respondent sued appellant and other defendants, alleging that appellant owed a duty to him and others to place a warning on its private road alerting drivers to the approaching intersection with the public road. He alleged appellant breached that duty, causing his injuries.

Appellant's motion for summary judgment was denied, as was its motion for nonsuit made during trial. The jury returned a verdict finding appellant negligent, that the negligence was a cause of respondent's injuries, and that appellant was 35 percent responsible for the injuries. The court subsequently entered judgment against appellant in the amount of $1,637,226. Appellant filed a timely notice of appeal.

## Discussion

Appellant contends it had no duty to respondent arising from the nonpermissive, negligent use of its property by a third party. In the circumstances of this case, we agree.

The existence of a duty owed by a defendant to a plaintiff is a question of law for the court, reviewed de novo on appeal. In a posttrial procedural setting, we view the facts, where supported by substantial evidence, in the light most favorable to the plaintiff. (See *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 237, 245 [30 Cal.Rptr.3d 145, 113 P.3d 1159].)

Generally, a landowner has a duty to act reasonably in the management of property "in view of the probability of injury to others." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561].) "A landowner's duty of care to avoid exposing others to a risk of injury is not limited to injuries that occur on premises owned or controlled by the landowner. Rather, the duty of care encompasses a duty to avoid exposing persons to risks of injury that occur off site if the landowner's property is maintained in such a manner as to expose persons to an unreasonable risk of injury offsite." (*Barnes v. Black* (1999) 71 Cal.App.4th 1473, 1478 [84 Cal.Rptr.2d 634].)[3]

---

[3] Appellant quotes *Delgado v. Trax Bar & Grill, supra,* 36 Cal.4th at page 235, where the Supreme Court states that "it . . . is well established that, as a general matter, there is no duty

■ In determining whether a duty should be imposed in a particular case, a court must consider the following factors in the circumstances of the case: the foreseeability of harm to the injured party, the degree of certainty that party has suffered injury, the closeness of the connection between the condition of the property and the injury, the moral blame attached to the landowner's conduct, the policy of preventing future harm, the extent of the burden the duty would impose compared to the benefit to the community from imposing the burden, and the practical availability of insurance for the risk involved (that is, cost, prevalence and availability of such insurance). (*Rowland v. Christian, supra,* 69 Cal.2d at p. 113.) "Foreseeability and the extent of the burden to the defendant are ordinarily the crucial considerations, but in a given case one or more of the other *Rowland* factors may be determinative of the duty analysis." (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213 [63 Cal.Rptr.3d 99, 162 P.3d 610].)

■ The Supreme Court recently quoted with approval the following description of the way a court should approach the duty analysis: " 'First, the court must determine the specific measures the plaintiff asserts the defendant should have taken to prevent the harm. This frames the issue for the court's determination by defining the scope of the duty under consideration. Second, the court must analyze how financially and socially burdensome these proposed measures would be to a landlord, which measures could range from minimally burdensome to significantly burdensome under the facts of the case. Third, the court must identify the nature of the third party conduct that the plaintiff claims could have been prevented had the landlord taken the proposed measures, and assess how foreseeable (on a continuum from a mere possibility to a reasonable probability) it was that this conduct would occur. Once the burden and foreseeability have been independently assessed, they can be compared in determining the scope of the duty the court imposes on a given defendant. The more certain the likelihood of harm, the higher the burden a court will impose on a landlord to prevent it; the less foreseeable the harm, the lower the burden a court will place on a landlord.' " (*Castaneda v.*

to act to protect others from the conduct of third parties." Respondent casts his counterarguments in similar terms, contending that appellant "seeks to have the court declare a judicial exception to the general rule that [a landowner] owe[s] a duty to use reasonable care in the management of its property." While appellant has accurately quoted *Delgado,* the phrase "to act to protect others" has narrow meaning in the cases: it means that one "who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another" from the acts of a third party. (*Williams v. State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137]; see Rest.2d Torts, § 314, com. a, p. 116; *id.,* § 321, com. a, illus. 3, p. 133.) The question in the present case is, in a sense, whether appellant created a "peril," that is, an unreasonable risk of harm to others. Thus, in such cases as *Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49 [192 Cal.Rptr. 857, 665 P.2d 947] and *Robison v. Six Flags Theme Parks Inc.* (1998) 64 Cal.App.4th 1294 [75 Cal.Rptr.2d 838], negligent third parties were the immediate cause of the plaintiff's injury, but the defendant property owners had created an unreasonable hazard that resulted in imposition of a duty on them.

*Olsher, supra*, 41 Cal.4th at p. 1214, quoting *Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 285 [12 Cal.Rptr.3d 846].)

## A. *Respondent's Assertion of Appropriate Preventive Measures*

Respondent does not assert specific preventive measures that should be taken by a rural landowner. From his various statements on the subject, we think a fair summary of his assertions would be this: Where traffic on a public road is not visible before a driver on a private road reaches the right-of-way of the public road, the owner of the private road is required to post a stop sign or a warning to notify drivers on the private road that there is a road crossing ahead.

Respondent would object that this summary statement is too broad. For example, he contends warnings must be placed only where "a visibility obstruction exists at points where private roads meet, and cross a public road." In the present case, however, the undisputed evidence was that the view along the public right-of-way itself was not obstructed, by appellant's trees or otherwise. In traditional "blind intersection" cases, the obstruction on the defendant's land has blocked the view of roadway users until they are actually in the intersection. (See, e.g., *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838 [206 Cal.Rptr. 136, 686 P.2d 656] [location of sign required driver to enter intersection for clear view]; *Swanberg v. O'Mectin* (1984) 157 Cal.App.3d 325, 328 [203 Cal.Rptr. 701] [landlord's failure to "check[] to see . . . whether the shrubs were growing out into the street and thus hindering traffic"]; *Wisher v. Fowler* (1970) 7 Cal.App.3d 225, 227 [86 Cal.Rptr. 582] [hedge obscured vision of drivers entering public road until they "were 'in excess of 15 feet on the roadway' "].)[4] Accordingly, we consider the issue of duty in the context of a failure to provide warning of an intersection that was obscured by appellant's trees only from a vantage point outside the public right-of-way.

In a similar manner, respondent seeks to narrow the scope of his proposed preventive measures by pointing to certain factors unique to the present case: (1) evidence supported a conclusion that the private and public roads were the same color and (2) there was evidence that the presence of a cable 200 feet beyond the public road on the continuation of Abercrombie Road could cause a driver's attention to be diverted from looking for the intersection (that is, Andrade testified he thought he had spotted the intersection,

---

[4] When respondent called Michael Carlisle, who had been designated by appellant as the person most knowledgeable about appellant's use of stop signs, plaintiff's counsel asked questions such as: "[I]f you perceived a hazard at a blind intersection, [would you] . . . ." Nowhere, however, was the witness asked what he meant by a blind intersection that would create a hazard.

expecting it to be just past the west-side cable, when it actually was well east of the cable). These are not realistic limitations on the scope of the proposed duty, however, since they would require the landowner to make a subjective evaluation of the difference in colors between the two roads (and, presumably, under various lighting conditions) and to evaluate whether anything across the public road might be distracting to a driver on the farm road. In other words, neither of these conditions is alleged to have constituted a specific concealed danger, or trap, that might have somehow superseded Andrade's negligence or otherwise might have deprived Andrade's negligence of its causative role in the accident. The particular conditions of the premises may have been a distraction for a driver unfamiliar with the road, but they were not shown to be uniquely so. The jury impliedly found the conditions on the property only came into play because Andrade was traveling at an unsafe speed, as we discuss below.

Accordingly, we conclude that the duty respondent seeks to impose cannot be narrowly confined to the present circumstances but would, instead, be a duty that is broadly applicable in rural areas.

### B. *The Burden of Imposing the Asserted Duty*

Respondent contends: "The extent of the burden on [appellant] is minimal and as easily satisfied. With the mere installation of a $20.00 stop sign, use of cables or chains across the road, or any number of other advance warnings, [appellant] could have complied with the duty." While respondent recognizes that imposition of this duty might be broadly applicable to all owners of farm roads, he contends posting such warnings is a "duty which the farming community already recognizes as its custom and practice. Where a visibility obstruction exists at points where private farm roads meet, and cross a public road," expert testimony established that a "reasonable farmer" would post a warning or a stop sign.

We disagree with respondent's assessment of the burden, both on appellant and on society at large, that would be imposed by a finding of duty in the present case. As we have explained above, the present intersection was not "obscured" in the sense discussed in prior cases: appellant's trees did not encroach on the public right-of-way or impair the range of vision of a person in the right-of-way. Instead, the present case presents a situation common to every field, grove, or orchard on which vegetation grows higher than a seated automobile driver. The duty would require every owner of such property to inspect every road on the property to determine whether the view of an intersection is obscured from some vantage point an undefined distance from the public road, and then to post a warning sign on the private road. This is a significantly greater burden on appellant and the broader farming community than "the mere installation of a $20.00 stop sign."

### C. *The Nature and Foreseeability of Third Party Conduct*

■ As discussed in footnote 3, *ante*, a landowner is not insulated from liability merely because a third party was the immediate cause of a plaintiff's injury. " 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.' " (*Bigbee v. Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 58, quoting Rest.2d Torts, § 449.) Thus, for example, in the case of *criminal* conduct by a third party, an extraordinarily high degree of foreseeability is required to impose a duty on the landowner, in part because "it is difficult if not impossible in today's society to predict when a criminal might strike." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1150 [12 Cal.Rptr.3d 615, 88 P.3d 517].) In the case of ordinary negligence by the third party, duty may be imposed based upon a conclusion that "an observable danger" foreseeably has "ripen[ed] into an accident." (*Robison v. Six Flags Theme Parks Inc., supra,* 64 Cal.App.4th at p. 1301.)

The third step of our duty analysis requires that we "identify the nature of the third party conduct that the plaintiff claims could have been prevented had the landlord taken the proposed measures, and assess how foreseeable (on a continuum from a mere possibility to a reasonable probability) it was that this conduct would occur." (*Vasquez v. Residential Investments, Inc., supra,* 118 Cal.App.4th at p. 285.) This requires that we determine "the general nature of the danger presented." (*Robison v. Six Flags Theme Parks Inc., supra,* 64 Cal.App.4th at p. 1299; see *Wiener v. Southcoast Childcare Centers, Inc., supra,* 32 Cal.4th at pp. 1149–1150 [distinguishing related inquiry where third party conduct is criminal].)

In the present case, we conclude the general nature of the danger presented is this: A driver unfamiliar with the road, traveling at an excessive rate of speed, would not have time to stop if the driver failed to see the intersecting public road before reaching the public road right-of-way. This statement of the peril takes account of the jury's determination that Andrade was negligent in the operation of his vehicle. Evidence of Andrade's excessive speed on an unfamiliar farm road is the only possible basis in the record for this jury determination.

#### i. *Foreseeability of Use by One Unfamiliar with Road*

Farm roads, by their nature, are intended to permit access to various parts of the landowner's property to accomplish the owner's purposes. In the present case, there was no evidence that Abercrombie Road had informally

been opened to use by the public or by workers on adjacent ranches. In fact, the undisputed evidence was to the contrary: Andrade testified that he had never used the road before, even though he had been working in the general area for over six years, and the manager of the adjacent property had never used the road. Access to Abercrombie Road, in keeping with appellant's general practice in Tulare County, was usually blocked by a cable across the road at points where the road left appellant's land and was not previously known to have been used as a shortcut by those not connected with appellant's farming operation.

Respondent, both in argument to the jury and on appeal, attempts to draw an inference of known third party use of Abercrombie Road because it was "paved." The evidence was that farmers sometimes oil their dirt roads because dust stirred up by vehicles can provide a habitat for mites on tree leaves. Appellant's management witness testified that appellant tended to oil its more heavily traveled roads. Respondent, at trial and on appeal, suggests this means appellant knew Abercrombie Road was heavily traveled and, by inference, was traveled by drivers who were unfamiliar with the road.

The fact that Abercrombie Road met appellant's criteria for oiling, even if one such criterion were frequency of use, does not address the total absence of any evidence of prior use by anyone except appellant's employees and contract workers. We conclude use of this road by one unfamiliar with it was a possibility, but was not reasonably likely.

ii. *Foreseeability of Use at Unsafe Speed*

Just as there was no evidence that anyone except appellant's workers used Abercrombie Road (or appellant's other farm roads generally), there was no evidence anyone traveled Abercrombie Road (or appellant's other farm roads generally) at unsafe speeds. Moreover, there was no evidence appellant knew or should have known about such unsafe use. Certainly most users of farm roads bounded by tree rows could be expected to drive rather cautiously because of the danger of farm equipment and workers emerging from between the rows.

Appellant's Kern County farm manager acknowledged in his testimony that he knew of instances in the past where trespassers on appellant's farm roads had driven recklessly. The Tulare County farm manager testified that such activities, together with vandalism and abandonment of stolen cars on appellant's properties, were the reason appellant sought to prevent access to

its property by using cables across entrances to roads. There was no evidence, however, that reckless and criminal activity occurred in the limited time an otherwise chained road was opened for access by appellant's workers on a particular day, as was the case here.

Finally, respondent contends that any drivers on Abercrombie Road would be encouraged to drive faster because of the smooth surface of the oiled road. The implication of this argument is that a landowner who improves a private road, even if the better surface is merely a byproduct of the landowner's dust control program, should foresee that users unfamiliar with the road will travel at excessive speed, even if the landowner cannot reasonably foresee such users at all. That proposition finds no support in reason: no matter how good the surface, common sense would dictate, once again, that an unexpected user of a farm road closely bounded by tree rows would drive rather cautiously because of the danger of farm equipment and workers emerging from between the rows.

We conclude use of excessive speed on Abercrombie Road was possible, in the sense that the road surface might not cause physical damage to a vehicle in the same way a rutted dirt road might, but use of excessive speed through the grove was not reasonably likely.

### D. *Balancing of Burden and Foreseeability*

██ "Once the burden and foreseeability have been independently assessed, they can be compared in determining the scope of the duty the court imposes on a given defendant." (*Vasquez v. Residential Investments, Inc., supra*, 118 Cal.App.4th at p. 285.) We employ a "sliding-scale balancing formula" under which, "as a general matter, imposition of a high burden requires heightened foreseeability, but a minimal burden may be imposed upon a showing of a lesser degree of foreseeability." (*Delgado v. Trax Bar & Grill, supra*, 36 Cal.4th at p. 243.)

In the present case, as we have discussed above, the burden sought to be imposed is relatively high: It would require every rural landowner to post adequate warnings at every place a farm road intersects a public road any time vegetation on the property exceeds the height of the driver of a vehicle, even though the owner has not permitted the use of the private road by the public, even though it has no knowledge that the road is being used by members of the public, and even though the vegetation does not encroach on the dedicated right-of-way of the public road. Such a duty not only would require initial placement of the warning signs or devices, but inspections necessary to determine that signs or devices have not been stolen, vandalized, or damaged.

Weighed against this significant burden is the low foreseeability of the type of conduct that directly caused respondent's injury in this case: The evidence did not permit a reasonable inference that appellant knew or should have known members of the public were using its farm roads for casual travel or that any member of the public had ever used Abercrombie Road during the limited times the cable barriers were down. Nor was there any evidence to support an inference that appellant knew or should have known that any unexpected user of Abercrombie Road would drive at an unsafe speed.

We conclude the foreseeability of the type of negligent act by Andrade, under all of the circumstances of this case, does not outweigh the high burden the proposed duty would place upon rural landowners to prevent such conduct.

### E. *Other* Rowland v. Christian *Factors*

The remaining factors set out in *Rowland v. Christian, supra,* 69 Cal.2d at page 113, do not lead us to impose upon appellant and other rural landowners the duty proposed by respondent.[5] The record here does not support a conclusion that appellant's actions were morally blameworthy: Appellant was simply using its land in a wholly typical manner for the production of citrus crops; its trees did not encroach on the public right-of-way and it did not hold the road open for public use. While a duty to post warning signs might prevent future harm, the certainty of such a result is not assured: A stop sign or a warning sign is effective only if a driver has time to react after seeing it; the third party actor in this case was already traveling at an unsafe rate of speed; other speeders in such circumstances may or may not have time to react to a warning sign, depending on their exact speed and the particular placement of the sign. Similarly, the connection between appellant's inaction and respondent's injury is not particularly close: The intersection might well have been visible to a driver traveling at an appropriate speed through the groves. The remaining factors, certainty that respondent suffered injury and the practical availability of insurance, are not sufficient to outweigh the significant burden arising from the proposed duty and limited foreseeability of the type of third party conduct present here. Accordingly, we conclude the trial court erred in determining that appellant owed a duty of care to respondent under the circumstances ·of this case.

---

[5] The remaining factors suggested in *Rowland v. Christian, supra,* 69 Cal.2d at page 113 are the degree of certainty that the party has suffered injury, the closeness of the connection between the condition of the property and the injury, the moral blame attached to the landowner's conduct, the policy of preventing future harm, and the practical availability of insurance for the risk involved (that is, cost, prevalence and availability of such insurance).

## Disposition

The judgment is reversed. Appellant is awarded costs on appeal.

Cornell, J., and Gomes, J., concurred.

A petition for a rehearing was denied August 7, 2008, and respondent's petition for review by the Supreme Court was denied October 28, 2008, S166250. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.