[No. G042436. Fourth Dist., Div. Three. June 10, 2010.]

KELLY FORMET, Plaintiff and Appellant, v.
THE LLOYD TERMITE CONTROL CO., Defendant and Respondent.

596

COUNSEL

Quinlivan Wexler, Patrick C. Quinlivan and Pamela J. Silk for Plaintiff and Appellant.

Simpson Delmore Greene, Daniel W. Towson and Sandra F. Taylor for Defendant and Respondent.

OPINION

**RYLAARSDAM, Acting P. J.**—This appeal by plaintiff Kelly Formet is from a summary judgment in favor of defendant The Lloyd Termite Control Co., a licensed pest inspection company. In furnishing a "Wood Destroying Pests and Organisms Report," defendant allegedly failed to discover and disclose a specified area of dry rot damage, which caused plaintiff to fall from a balcony. At the time, plaintiff was a guest of the property owners to whom the property had been transferred by the previous owner who, in turn, had contracted with defendant to provide the report. The trial court granted summary judgment, finding defendant owed no legal duty to plaintiff. Upon de novo review, we agree with the trial court and affirm.

### FACTS AND PROCEDURAL HISTORY

Sandra Jean Caskey inherited the property from her mother, who had resided there for over 40 years. Before inheriting the property, Caskey had enlisted the services of a licensed home inspector to evaluate the property. The inspection noted "evidence of wood destroying insects[,] organisms and/or rot observed at posts, doors, trim, etc. Recommend further evaluation by licensed structural pest control company." (Capitalization omitted.) The report also noted "[f]lashing loose at balcony deck, susceptible to moisture intrusion. Recommend sealing overlap to reduce chance of leakage." (Capitalization omitted.) Following the home inspector's recommendation, Caskey

retained defendant to prepare a "Wood Destroying Pests and Organisms Report" (capitalization omitted).

Defendant's report noted drywood termites throughout the main house and observed termite damage in the support post at the connected apartment's stair landing. It recommended Caskey fumigate the property for the drywood termites and contact a licensed contractor to repair the termite damage. Caskey paid defendant for its fumigation services, but did not hire anyone to repair the structural damage to the property. In fact, as defendant points out, "both [defendant's] inspection report and the prior ICBO [(International Conference of Building Officials)] home inspection noted wood damage in the patio area where [plaintiff] fell, and advised . . . Caskey to hire a licensed contractor to make the necessary repairs" (italics omitted); she did not contract for these repairs.

Four months later, Brian and Jennifer Villeneuve purchased half of the property and moved in. When plaintiff was a guest of the Villeneuves, he leaned against the balcony railing and fell approximately 10 feet to the ground when the railing failed. Defendant failed to note in the termite report any damage to the specific balcony railing that gave way. In plaintiff's negligence action he alleged defendant should have discovered and reported the dry rot damage in the railing.

In granting summary judgment, relying on *FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69 [41 Cal.Rptr.2d 404], the trial court determined defendant did not owe a duty to plaintiff. "The [s]tructural pest control professional has specific duties defined by statute. These duties are owed only to the homeowner with whom it was in privity of contract and intended beneficiaries. Invitees to the property, such as plaintiff, do not qualify as intended beneficiaries."

## DISCUSSION

Appeal from a motion for summary judgment is subject to a de novo review. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) Here, summary judgment was based upon the trial court's determination there was no duty, which is a legal question (*Shin v. Ahn* (2007) 42 Cal.4th 482, 488 [64 Cal.Rptr.3d 803, 165 P.3d 581]) also subject to de novo review (*Garcia v. Paramount Citrus Assn., Inc.* (2008) 164 Cal.App.4th 1448, 1453 [80 Cal.Rptr.3d 512]).

1. *Contractual Privity As a Limitation on Duty*

■ The parties note "there are relatively few decisions that discuss a pest inspection professional's potential liability to third parties for a negligent

inspection" and "[t]hat we are in uncharted territory is a true statement." Commentators addressing the issue also agree. (See, e.g., 11 Miller & Starr, Cal. Real Estate (3d ed. 2009) § 29:60, pp. 29-223 to 29-224.) Hence, we ask whether *FSR Brokerage, Inc. v. Superior Court, supra*, 35 Cal.App.4th 69 limits the duty owed by pest inspectors to third parties. We answer this question in the affirmative.

The general rule arises from *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370 [11 Cal.Rptr.2d 51, 834 P.2d 745] (*Bily*), which held a provider of information in a commercial context is not liable to third parties who are neither the beneficiaries of, nor parties to, a contract. (*Id.* at p. 392.) In *Bily*, investors in a computer company sued the defendant, an accounting firm, for an allegedly negligent audit of the company. The audit contract was between the computer company and the defendant; the investors were not parties to the contract. The investors contended they suffered injury as a result of their decision to invest in the company in reliance on the defendant's negligent audit. *Bily* held liability should be narrowed for suppliers of information in commercial transactions and as a result no duty was owed to the investors. (*Id.* at p. 376.)

This rule of limited duty was formulated in partial reliance on "Section 552 of the Restatement Second of Torts[, which] covers 'Information Negligently Supplied for the Guidance of Others.' " (*Bily v. Arthur Young & Co., supra*, 3 Cal.4th at p. 392.) "[O]ne who negligently supplies false information 'for the guidance of others in their business transactions' is liable for economic loss suffered by the recipients in justifiable reliance on the information. [Citation.]" (*Ibid.*) The court reasoned "the Restatement rule has been . . . a satisfactory compromise between . . . discomfort with the traditional privity approach and the 'specter of unlimited liability.' [Citation.]" (*Id.* at p. 394.)

"Though *Bily* involved the liability of accountants, its reasoning applies with equal force to home inspection companies. 'Accountants are not unique in their position as suppliers of information and evaluations for the use and benefit of others. Other professionals, including attorneys, architects, engineers, title insurers and abstractors, and others also perform that function.' [Citation.]" (*Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1121 [103 Cal.Rptr.2d 858], quoting *Bily v. Arthur Young & Co., supra*, 3 Cal.4th at p. 410.)

*FSR Brokerage, Inc. v. Superior Court, supra*, 35 Cal.App.4th 69 applied the reasoning of *Bily* beyond mere economic injury to the field of personal injury resulting from information provided in business transactions. There, the court reasoned the sale of residential real estate is a commercial transaction, and the duty owed from disclosures made to assist a buyer's decision

should be limited to the intended beneficiary—the buyer. (*Id.* at pp. 73–74 [realtor owed no duty to injured guests to disclose collapsed balcony not built to code]; also see *Coldwell Banker Residential Brokerage Co. v. Superior Court* (2004) 117 Cal.App.4th 158, 166 [11 Cal.Rptr.3d 564] [real estate broker owed no duty to son of property buyer for alleged failure to disclose presence of toxic mold].)

In *Coldwell Banker* and *FSR Brokerage*, the realtor's primary purpose was to persuade someone to enter into a commercial transaction—the purchase of real property. Defendant's analogous purpose was to identify and disclose conditions likely to lead to termite infestations or dry rot so as to assist the property owner in valuing the property or to separately contract to have damages repaired. Both endeavors encompass an economic component. Indeed, the realtors in *Coldwell Banker* and *FSR Brokerage* negligently supplied incorrect information "for the guidance of others in their business transactions" (Rest.2d Torts, § 552) and as such were not liable to third parties under *Bily*. Here, defendant was facilitating an economic transaction by giving the owner information to assist in valuing the property and to contract for fumigation services and the repair of structural damage.

■ While there are differences in the statutory duties owed by realtors and pest inspectors, both have a duty to make a reasonable assessment of property for potential safety defects. "Under [Civil Code] section 2079, subdivision (a), a real estate broker has a duty to a prospective purchaser of residential real property 'to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property . . . .' " (*Coldwell Banker Residential Brokerage Co. v. Superior Court, supra,* 117 Cal.App.4th at p. 164, italics omitted, quoting Civ. Code, § 2079.)

2. *Defendant's inspection did not create a duty to plaintiff.*

Defendant asserts it was a mere supplier of information in a commercial context rather than a safety inspector. In support of this contention, it observes "the most common use for a Wood Destroying Pests and Organisms Inspection Report is to provide the owner and a prospective buyer a structural assessment of real property so they may make an informed decision regarding the property's economic value during a sale." Defendant also relies upon *Greenberg v. Hastie* (1962) 202 Cal.App.2d 159, 176–177 [20 Cal.Rptr. 747] (measure of damages for negligent pest inspection is diminution in value of property), for the proposition pest control inspections are principally economic, rather than safety related.

We cannot guess the intentions of the parties, trying to somehow infer whether defendant's inspection was used primarily for an economic evaluation of the property, to determine its sales value, or as a safety inspection. But there are always economic considerations when there is a transfer of real property, and this economic purpose undoubtedly often drives the demand for termite inspections. When Caskey inherited the property, she retained defendant to conduct an inspection. This inspection was probably made pursuant to the recommendation of the licensed home inspector, who had evaluated the property prior to its ownership transfer. A few months following the inspection, Caskey's son and daughter-in-law purchased half of the property and moved in.

The inspection was conducted so that a licensed pest inspector could perform a fumigation of the property to eradicate the problems discovered. Defendant, did, in fact, perform the subsequent fumigation. And, given the prevailing purpose of termite inspections to determine the need for fumigation services, *FSR Brokerage, Inc.*, applies. Since a pest inspection report and termite fumigation are commercial transactions, the duty owed from disclosures made to help decide whether to purchase fumigation should be limited to the intended beneficiary—the property owner.

3. *The factors enumerated in* Rowland v. Christian *also support the decision.*

■ The trial court's decision must also be affirmed under *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561]. The factors warranting a departure from the general duty of reasonable care—as imposed by Civil Code section 1714—include the "foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Rowland v. Christian, supra,* 69 Cal.2d at p. 113; see Civ. Code, § 1714.) Analysis of the applicable individual factors leads to the conclusion that a departure from the general duty of reasonable care is warranted.

a. *The Foreseeability of Harm to Plaintiff*

■ " 'The foreseeability of the harm, though not determinative, has become the chief factor in duty analysis. [Citation.]' " (*Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260, 1272 [97 Cal.Rptr.3d

241].) Foreseeability as to duty is based on whether an event's nature might generally give rise to a foreseeable injury, whereas foreseeability in the negligence and causation context requires a more fact-specific inquiry. (*Id.* at p. 1273.) In this way, "[f]oreseeability with respect to the analysis of duty must be distinguished from foreseeability in the context of determining negligence (i.e., breach of duty) or causation." (*Id.* at p. 1272.)

On one hand, it is foreseeable owners, occupants, or even guests are exposed to the dangers of structural damage defendant allegedly failed to discover and disclose in its inspection report. Yet the inspection report would not necessarily result in the necessary repairs being made; rather it recommended the property owner contact a licensed contractor if she wished to make such repairs. The termite inspector cannot foresee whether a recommendation to hire a licensed contractor to repair damage would result in the property owner doing so.

> b. *The Closeness of the Connection Between Defendant's Conduct and Plaintiff's Fall*

Defendant's alleged negligence in failing to discover and disclose the dry rot in the railing ultimately led to the accident. Defendant's statutory duty was to discover and disclose such dry rot damage. But defendant's allegedly negligent inspection is not directly connected to the injury suffered. Both defendant and the prior licensed home inspector noted wood damage in the patio area where plaintiff fell and recommended Caskey hire a licensed contractor to make the necessary repairs.

■ Further, courts have found a "lack of exclusive, direct control over the property . . . diminishes the [defendant's] connection to what caused the . . . injury. [Citation.]" (*Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 896 [98 Cal.Rptr.2d 576].) Here defendant did not exercise any direct control, especially in view of the fact it was not employed to repair the structural damage caused by dry rot disclosed in the termite report. While there is a connection between defendant's conduct and plaintiff's injury, it is an attenuated one.

> c. *The Moral Blame Attached to Defendant's Conduct*

■ The moral blame factor "is intended to describe a high degree of moral culpability" in terms of the defendant's state of mind and the inherently harmful nature of the defendant's acts. (*Rotolo v. San Jose Sports & Entertainment, LLC* (2007) 151 Cal.App.4th 307, 337 [59 Cal.Rptr.3d 770].) Thus "courts have required a higher degree of moral culpability such as where the defendant (1) intended or planned the harmful result [citation];

(2) had actual or constructive knowledge of the harmful consequences of their behavior [citation]; (3) acted in bad faith or with a reckless indifference to the results of their conduct [citations]; or (4) engaged in inherently harmful acts [citation]." (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 270 [80 Cal.Rptr.2d 196].)

Defendant satisfies none of these criteria. Plaintiff rests his argument on the idea that "[defendant] as a licensed pest inspector is morally obligated to perform its services in a reasonable and workmanlike manner." It is true a pest inspector's profession is safety related, but this does not make an allegedly negligent oversight morally culpable. The only factor for moral blame plaintiff may have established—constructive knowledge of the consequences—would suggest any negligently performed property inspection with a safety component necessarily entails moral culpability. Such a proposition cannot be supported.

Months before the accident, the property owner knew of a need to further inspect and repair the stair landing where plaintiff was injured because a home inspection report pointed out the potential for water-related damage. This report was furnished by a licensed home inspector and made in addition to the report furnished by defendant. Thus, because the property owner was on notice of this potential for dry rot, any moral blame must focus on the property owner who failed to followup on defendant's recommendations.

### d. *The Policy of Preventing Future Harm*

The safety-related nature of defendant's inspection reflects a potential policy objective in preventing harm to occupants of a property due to structural damage. Plaintiff contends the cause of his injury was the precise condition defendant was obligated to discover and disclose and that imposing a legal duty on licensed pest inspectors in situations like this will lessen the chances of future accidents arising from negligent inspections.

Yet, as discussed in our analysis of the other *Rowland* factors, even if defendant had discovered and disclosed the damage, there is no suggestion the property owner would have repaired such damage. Rather, it is more likely she would have ignored such warnings of dry rot damage just like she ignored the other damage defendant disclosed. In other words, had defendant conducted a flawless report, the outcome probably would not have been affected.

### e. *The Extent of the Burden and Consequences to the Community*

Common sense suggests that additional liability imposed upon licensed pest inspectors would ultimately drive up the cost to homeowners for an

inspection. We lack facts to enable us to compare the extent of the burden on defendant to that on the greater community.

### f. The Availability of Insurance

Plaintiff contends "[n]o evidence was submitted to support a claim that imposition of liability would have a negative effect on the availability or cost of insurance." Further, without any supporting authority, plaintiff asserts "[p]est control companies already carry liability insurance." Seemingly there is no statutory duty for a licensed pest inspector to carry liability insurance. Defendant acknowledges the relevance of insurance in its brief, but ends the discussion there. No reference is made to defendant's liability insurance, its policy, or the industry practices and standards.

Nevertheless, although it is probable insurance would be available, there is no obligation for us to consider evidence of the pest control liability insurance industry because there is no record upon which to base such a determination. Other courts facing an absence of evidence regarding liability insurance have concluded "[w]e cannot, therefore, evaluate this factor one way or the other." (*Laabs v. Southern California Edison Co., supra,* 175 Cal.App.4th at p. 1279.)

### g. Conclusion

An analysis of the *Rowland* factors weighs in favor of a finding of no legal duty. There is also considerable overlap between the *Rowland* factors and "[t]he factors to be considered in determining whether a duty of care exists based on the relationship between two parties in a commercial context who are not in privity[, which] were established in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16] . . . : 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' " (*National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.* (2009) 171 Cal.App.4th 35, 45 [89 Cal.Rptr.3d 473].) In sum, defendant does not owe a duty to plaintiff.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Moore, J., and Fybel, J., concurred.