IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 6, 2016 Session

## CHARLES GROGAN v. DANIEL UGGLA, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Williamson County**
**No. 2011-443          James G. Martin, III, Judge**

———————————————————

**No. M2014-01961-SC-R11-CV**

———————————————————

HOLLY KIRBY, J., concurring in part and dissenting in part.

I write separately in this case because I concur with part of the majority's analysis and disagree with other parts of it.

I concur in the majority's recognition that Mr. Grogan states in his complaint a cause of action based on ordinary negligence, in the form of a claim that the defendant home inspectors negligently performed the inspection of the home purchased by Mr. Uggla. As noted by the majority, the defendant home inspectors have sought to portray Mr. Grogan's cause of action as comprised of one claim, a claim of negligent misrepresentation, and the majority resisted the defendants' attempt at misdirection. Framing the cause of action appropriately is key to any court's analysis of a motion for summary judgment, and it is important in this case that the majority accurately discerns that Mr. Grogan has asserted two claims, one of which is a claim of negligent inspection.

I also concur wholeheartedly in the majority's decision to use Section 324A of the Restatement (Second) of Torts (1965) as the appropriate analytical framework for evaluating Mr. Grogan's negligent inspection claim. This decision places Tennessee among the vast majority of jurisdictions that utilize Section 324A to analyze a claim of negligent inspection resulting in physical harm to a third party. *See generally* Frank J. Wozniak, Annotation, *Breach of Assumed Duty to Inspect Property as Ground for Liability to Third Party*, 13 A.L.R. 5th 289 (originally published in 1993) (updated 2017) (collecting cases).

Unfortunately, after wisely recognizing a claim of negligent inspection and deciding to use Section 324A as the framework by which to analyze it, the majority goes

-1-

off track.  As explained below, the majority's application of the law to this claim results in flawed analysis.

The majority's analysis begins well enough.  Evaluating Mr. Grogan's negligent inspection claim, the majority observes that the defendants' home inspection was conducted for the client and for the benefit of the client, and it notes that the home inspection agreement was "to inspect the property *for the client*."  The majority also cites statutes indicating that a home inspection is intended to provide the client with an understanding of the condition of the property.  I have no quarrel with these observations; by its terms, Section 324A contemplates a factual situation in which the defendant "undertakes, gratuitously or for consideration, to render services *to another*. . . ."  Restatement (Second) of Torts § 324A (emphasis added).  Even the illustrations to Section 324A include two negligent-inspection cases involving inspections done for a client who was not the injured party.[1]  The facts pointed out by the majority are entirely consistent with the theory of Mr. Grogan's negligent inspection claim against the defendant home inspectors: Mr. Grogan argues that, had the defendants done a proper home inspection for their client—one that informed the client of the unsafe condition of the deck—the client in turn would have acted on this information to take precautions to prevent Mr. Grogan from sustaining the grievous injuries for which he seeks damages.

At this point, however, the majority's analysis goes awry.  The majority asserts that "the defendant home inspector's duty as circumscribed by the agreement and the relevant statutes is owed to the client."  The majority then arrives at the unexpected conclusion that, as a matter of law, the defendant home inspectors "did not render services that they knew or should have known was for the protection of third parties

---

[1] The illustrations in the comments to Section 324A include the following:

2.  The A Telephone Company employs B to inspect its telephone poles.  B negligently inspects and approves a pole adjoining the public highway.  Because of its defective condition the pole falls upon and injures a traveler upon the highway.  B is subject to liability to the traveler.

* * *

4.  A Company employs B Company to inspect the elevator in its office building. B Company sends a workman, who makes a negligent inspection and reports that the elevator is in good condition.  Due to defects in the elevator, which a proper inspection would have disclosed, the elevator falls and injuries C, a workman employed by A Company.  B Company is subject to liability to C.

Restatement (Second) of Torts § 324A, illustr. 2 and 4.

because their services were for the benefit of their client alone and . . . they therefore did not assume a duty to the plaintiff." This analysis is wrong for several reasons.

First, the majority's reasoning is internally inconsistent and at odds with Section 324A. As noted above, Section 324A is premised on the fact that the defendant's services are rendered to "another," not to the third party who suffers the physical harm. *See* Restatement (Second) of Torts § 324A. For the majority to say that it is analyzing the negligent inspection claim under Section 324A, premised on the defendant's rendering of services to another, and then turn around and hold that the defendant had no duty to the plaintiff because the home inspection was rendered for another, is paradoxical.

Second, the majority's analysis is inconsistent with prior Tennessee cases. The majority in effect holds that the lack of any direct relationship between the defendants and Mr. Grogan is a *per se* bar to liability. In contrast, this Court has on several occasions held a defendant liable for physical harm even where the defendant had no direct relationship with the plaintiff. For example, in *Satterfield v. Breeding Insulation Co.*, this Court held that the defendant employer had a duty to warn of asbestos exposure, owed to those who regularly came in close contact with the employee's contaminated work clothes over a long period of time, regardless of whether they were a family member of the employee or whether they lived with the employee. 266 S.W.3d 347, 374 (Tenn. 2008). *See also, e.g., Burroughs v. Magee*, 118 S.W.3d 323, 335 (Tenn. 2003) (holding that physician owed duty of care to passenger and her husband to warn patient truck driver of possible side effects of medications prescribed by physician to truck driver); *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 138 (Tenn. 2001) (holding that hospital owed duty of care to former patient and to general public to warn former patient of her possible exposure to HIV); *Turner v. Jordan*, 957 S.W.2d 815, 820 (Tenn. 1997) (holding that physician owed duty to hospital nurse to protect her from violent and intentional acts of hospitalized mentally-ill patient); *Bradshaw v. Daniel*, 854 S.W.2d 865, 872-73 (Tenn. 1993) (holding that physician of patient who died of Rocky Mountain Spotted Fever had duty to warn patient's wife of her risk of contracting same disease); *Wharton Transp. Corp. v. Bridges*, 606 S.W.2d 521, 527-28 (Tenn. 1980) (holding that physician who performed mandatory pre-employment physical exam of prospective truck driver owed duty of care to motoring public). The majority's holding is in direct contradiction to these Tennessee cases.[2]

Third, the majority's conclusion—that the defendants could not have recognized that the home inspection was for the protection of third parties—does not follow logically

---

[2] Numerous negligent inspection cases in other jurisdictions, applying Section 324A, have found liability based on an inspection done pursuant to a contract with another that results in injury to a third party. *See generally* Frank J. Wozniak, Annotation, *Breach of Assumed Duty to Inspect Property as Ground for Liability to Third Party*, 13 A.L.R. 5th 289 (originally published in 1993) (updated 2017) (collecting cases).

from the fact that the defendants' home inspection was rendered to the client. It is a *non sequitur*, an inference that does not follow from the premise.

Fourth, the question under Section 324A of whether the home inspection constitutes "services to another which [the defendants] should recognize as necessary for the protection of a third person" is a classic fact question for the jury to decide. It is worth emphasizing that this case presents to us on a motion for summary judgment. The majority has usurped the role of the jury to decide a disputed question of fact.

Fifth, as acknowledged by the majority, the home inspector in this case, Mr. Black, gave deposition testimony in which he conceded that one of the goals of a home inspection is to make sure that the home is safe for the persons who will occupy it, that a home inspector must check the safety of deck railings, that the national organization of home inspectors educates its members on how to inspect a deck railing for safety, and that he inspected the deck railings in Mr. Uggla's home for safety. In the face of this testimony, I do not see how the majority can hold, *as a matter of law*, that "the defendants did not render services that they knew or should have known was for the protection of third parties."

For all of these reasons, I disagree with the majority's analysis of Mr. Grogan's negligent inspection claim.

Next, as to Mr. Grogan's other claim; I agree with some parts of the majority's analysis but disagree with most of it. As noted by the majority, the defendant home inspectors have consistently characterized Mr. Grogan's claim as one of negligent misrepresentation. As such, the defendants urged this Court to "use this case as an opportunity" to adopt Section 552 of the Restatement (Second) of Torts as a framework for analysis in negligent misrepresentation cases that involve physical harm.[3]

---

[3] Section 552 states:

§ 552 Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for *pecuniary loss* caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

For the reasons explained below, I disagree with the majority's acceptance of the defendants' characterization of Mr. Grogan's claim as one of negligent misrepresentation. First, however, it is important to point out that the majority wisely rejects the defendants' "invitation" to extend Section 552 to factual situations it was never intended to address.

The Defendants acknowledged that Section 552 of the Restatement (Second) of Torts states explicitly that it is limited to cases involving only "pecuniary loss," but nevertheless urged the Court to "extend" Section 552 to cases involving physical harm. In support, the Defendants cited only a few inconclusive California cases.[4] The Defendants in fact pointed to *no state* that has rejected the Section 324A analytical framework and instead affirmatively adopted Section 552 as the appropriate analytical structure for negligent misrepresentation cases that result in physical harm to a third party, and I have found none.[5] The majority in this case correctly decided to reject the

---

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552 (1977) (emphasis added).

[4] In support of their argument, the Defendants cited several California cases that apply Section 552. *See Formet v. Lloyd Termite Control Co.*, 110 Cal. Rptr. 3d 551 (Cal. Ct. App. 2010); *Coldwell Banker Residential Brokerage Co. v. Superior Court*, 11 Cal. Rptr 3d 564 (Cal. Ct. App. 2004); *FSR Brokerage, Inc. v. Superior Court.*, 41 Cal. Rptr. 2d 404 (Cal. Ct. App. 1995). None of these cases discuss Section 324A, and none reject the Section 324A framework in favor of Section 552. In fact, California's Supreme Court recognizes the "negligent undertaking" theory of liability and utilizes Section 342A for analyzing such claims. *See, e.g., Paz v. State of California*, 994 P.2d 975, 980 (Cal. 2000) ("Section 324A's negligent undertaking theory of liability subsumes the well-known elements of any negligence action, viz., duty, breach of duty, proximate cause, and damages."). California courts have applied Section 324A in negligent inspection cases. *See e.g., Dekens v. Underwriters Labs. Inc.*, 132 Cal. Rptr. 2d 699, 700-701 (Cal. Ct. App. 2003) (plaintiff small appliance repairman sued company that tested appliances for asbestos and certified them as safe after plaintiff developed asbestos-related cancer, analyzed under Section 324A). Thus, the authority cited by the Defendants in support of adopting Section 552 is unconvincing.

[5] The comments to Section 552 explain why the standards for cases involving only pecuniary losses should be treated differently from those involving physical harm:

Although liability under the rule stated in this Section is based upon negligence of the actor in failing to exercise reasonable care or competence in supplying correct information, the scope of his liability is not determined by the rules that govern liability for the negligent supplying of chattels that imperil the security of the person, land or chattels of those to whom they are supplied (see §§ 388- 402), or other negligent misrepresentation that results in physical harm. (See § 311). When the harm that is caused is only pecuniary loss, the courts have found it necessary to adopt a more restricted rule of liability, because of the extent to which misinformation may be, and may be expected to be, circulated, and the magnitude of the losses which may follow from reliance upon it.

invitation to "extend" Section 552 to analyze a claim of negligent misrepresentation resulting in physical harm.

I also agree with the majority's decision not to foreclose the possibility of recognizing the tort of negligent misrepresentation resulting in physical harm, as set forth in Section 311 of the Restatement (Second) of Torts (1965). I agree with the majority that we do not need to resolve that issue in this case, but I do so for a different reason, namely, because Mr. Grogan does not assert a claim of negligent misrepresentation.

The majority accepts the defendant home inspectors' mischaracterization of the plaintiff's claim as one of negligent misrepresentation. It is not. In the amended complaint, after claiming that the defendant negligently performed the home inspection, the plaintiff asserts that the home inspector "failed to report that the second floor exterior deck railing was negligently constructed. . . and constituted an unreasonable risk of harm." [¶72, second amended complaint] This clearly states a failure-to-warn claim, not negligent misrepresentation.

In a footnote, the majority opinion explains briefly that it deemed Mr. Grogan's claim as one of negligent misrepresentation based on language contained in *U.S. v. Neustadt*, 366 U.S. 696 (1961). The Court in *Neustadt* generally described the tort of negligent misrepresentation, citing Section 552 of the Restatement (Second) of Torts. *Id.* at 706 n. 16. Respectfully, *Neustadt* is inapposite; it involved an affirmative misrepresentation in an FHA appraisal as to the value of a home, disclosed directly to the plaintiff purchasers.[6] The case in no way supports the majority's decision to accept the

---

Restatement (Second) of Torts § 552 cmt a. Therefore, when a negligent misrepresentation involves pecuniary loss, the danger of a cascading number of claimants increases exponentially, so the Restatement provisions for claims involving pecuniary loss appropriately provide for a narrower scope of liability. Specifically, Section 552 requires "reliance" by the injured party; obviously, the defendant home inspectors urged the Court to use Section 552 in this case precisely because Mr. Grogan cannot show reliance on the defendants' home inspection.

[6] In *Neustadt*, the plaintiff home purchasers sued the United States under the Federal Tort Claims Act based on a faulty Federal Home Administration (FHA) appraisal. They asserted that, because the FHA inspector failed to notice foundation problems in the house, the plaintiffs purchased the property for more than its fair market value. *Neustadt*, 366 U.S. at 700-01 ("The complaint alleged that the FHA's inspection and appraisal of the property for mortgage insurance purposes had been conducted negligently; that respondents were justified in relying upon the results of that inspection and appraisal; and that they 'would not have purchased the property for $24,000 but for the carelessness and negligence of (FHA).'"). The FHA's appraisal in that case was done for the mortgage company, not directly for the plaintiffs. The plaintiff did not assert that the FHA should have communicated specific information to the mortgage company about the house's foundation problem. Rather, the plaintiff claimed that the FHA appraisal was disclosed to them, as required by law, *id.* at 709-710, and they relied on the FHA valuation of the property in agreeing to a purchase price for the home. The Court framed the question before it as "whether the United States may be held liable, under the Federal Tort Claims Act. . . to a purchaser of residential

defendant home inspectors' mis-description of Mr. Grogan's claim as one of negligent misrepresentation.

In the same footnote, the majority adds an aside that, "even if a failure-to-warn claim were presented by the complaint, such a claim would be subsumed in the negligent inspection claim because the same duty analysis would apply." This too is faulty reasoning. Negligent inspection and failure-to-warn are two different claims. A failure-to-warn claim might be based, for example, on the home inspector performing an excellent inspection but inadvertently leaving out of the report the inspector's findings on the deck railing. Particularly since we are evaluating a grant of summary judgment, it is unsettling that the majority gives no explanation for why Mr. Grogan's claim should *not* be considered failure-to-warn.

The majority's mistaken designation of Mr. Grogan's claim is a serious misstep. As noted above, one of this Court's most important functions is to frame questions accurately, and sometimes to re-frame them if the parties and courts below have viewed them incorrectly. *See, e.g., Moore-Pennoyer v. State*, 515 S.W.3d 271, 276 (Tenn. 2017) (where the lower courts focused on the statutory waiver issue raised by the parties, the Supreme Court re-framed the question as one of failure to state a claim upon which relief could be granted).

Here, the result of the majority's erroneous labelling of Mr. Grogan's claim is to set up a logical fallacy. The majority first mischaracterizes Mr. Grogan's claim as one of negligent misrepresentation, observes that the tort of negligent misrepresentation requires an affirmative misstatement rather than an omission, and then dismisses Mr. Grogan's claim because he did not allege an affirmative misstatement.[7] "In the vernacular, this is

---

property who has been furnished a statement reporting the results of an inaccurate FHA inspection and appraisal, and who, in reliance thereon, has been induced by the seller to pay a purchase price in excess of the property's fair market value." *Id*. at 697–98. The Court ultimately held that limiting language in the Federal Tort Claims Act precluded the plaintiffs from suing based on the FHA appraisal. *Id*. at 710-11.

[7] The majority opinion states:

Section 311 "by its own terms requires an affirmative misstatement, not just a non-disclosure." [citations omitted] Although the comments to section 311 specifically include an illustration about a boiler inspection, that illustration involves the inspector issuing a certificate of safety, in other words, an affirmative false statement that the boiler was safe, when in fact it was not. Restatement (Second) of Torts § 311, cmt. d. The undisputed material facts in this case are that the home inspector failed to discover any defect in the deck railing and that as a result he did not report any defect. The home inspector did not affirmatively state that the deck railing was safe. Thus, even if we were to adopt section 311, the facts here foreclose the possibility of the plaintiff proving that the defendant home inspector gave *false* information to his client.

known as erecting a strawman and then striking it down." *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1100 (3d Cir. 1984) (Aldisert, J., concurring).

Respectfully, after observing that the plaintiff in this case does not allege an affirmative misstatement by the defendant home inspectors, the appropriate response would be to conclude that the claim asserted *is not one of negligent misrepresentation.* It is instead a claim of failure-to-warn, which by its very nature involves an *omission* by the defendant, in this case, a failure to warn the client of the condition of the deck railing.

This Court has in fact already recognized that a third party may, in some circumstances, assert a failure-to-warn claim, under facts that are somewhat analogous to those alleged by Mr. Grogan in this case. In *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133 (Tenn. 2001), Vanderbilt hospital did not inform a patient, Mrs. Amos, that she had been exposed to the human immunodeficiency virus (HIV) during surgery. This eventually resulted in HIV infection of the patient's husband and her infant daughter. The daughter died of conditions related to her HIV, and the patient and her husband sued Vanderbilt, alleging that the hospital "was negligent in failing to warn [the patient] that she was at risk for contracting HIV due to her blood transfusion during surgery at Vanderbilt." *Id.* at 135.

The *Amos* Court analyzed the husband's failure-to-warn claim by a straight duty/foreseeability analysis:

"The foreseeable victim is one who is said to be within the zone of danger." *Turner v. Jordan*, 957 S.W.2d 815, 819 (Tenn. 1997). . . . [T]he identifiable third parties may be extended beyond the patient's immediate family members. "The imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct." *Bradshaw*, 854 S.W.2d at 870. It was reasonably foreseeable that Mrs. Amos would one day marry and have a family. Her future husband and daughter were within the class of identifiable third persons at risk for exposure to HIV. . . . The duty contemplated here is not one to warn Mr. Amos himself of Mrs. Amos's exposure to HIV but to warn Mrs. Amos so that she might take adequate precautions to prevent transmission of the disease to Mr. Amos and their child. Vanderbilt's breach of that duty caused the reasonably foreseeable injuries suffered by Mr. Amos.

---

The majority then concludes that "summary judgment on the negligent misrepresentation claim was appropriate because the plaintiff has not alleged facts that would constitute an actionable claim of negligent misrepresentation involving the risk of physical harm."

*Id*. at 138 (citations and footnote omitted). As in *Amos*, Mr. Grogan does not allege that the defendant home inspectors should have warned *him* of the dangerous condition of the deck railing, but instead asserts that they should have warned their client, to enable the client to "take adequate precautions to prevent" the injuries Mr. Grogan suffered when he fell through the deck railing to the concrete below. This Court should evaluate Mr. Grogan's failure-to-warn claim by the same duty/foreseeability analysis it employed in *Amos* and other similar cases.

The facts in this case are peculiar and do not arise often. Indeed, after a fifty-state search, we have identified only two cases in which a third party has asserted a claim arising out of an allegedly negligent home inspection. *See Oliveira v. Jensen*, No. HHDCV136045373S, 2015 WL 9809752, at *11 (Conn. Super. Ct. Dec. 7, 2015) (finding a duty); *Verdin v. Rogers*, 926 So. 2d 603, 606 (La. Ct. App.), *writ denied*, 930 So. 2d 978 (La. 2006) (finding no duty). However, even though this case arises under unique facts, the troublesome aspects of the majority's analysis could end up being cited as precedent in a wide range of fact patterns for many years to come.

For these reasons, I concur in part and dissent in part from the majority opinion.

_____
HOLLY KIRBY, JUSTICE

-9-